**Lucy C. WISOR, Widow of Edward L. Wisor, Petitioner,**

v.

**DIRECTOR OFFICE OF WORKER'S COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**No. 84–3130.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Oct. 3, 1984.

Decided Nov. 21, 1984.

Mark P. Widoff, Widoff, Reager, Selkowitz & Alder, P.C., Harrisburg, Pa., for petitioner.

Francis X. Lilly, Sol. of Labor, Donald S. Shire, Asst. Sol., J. Michael O'Neill, Counsel for Appellate Litigation, Rita Roppolo, U.S. Dept. of Labor, Washington, D.C., for respondent.

Before ALDISERT, Chief Judge, and HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal we determine that a miner employed in a clay mine is not covered by the Black Lung Act even though his work entails some exposure to coal dust. Accordingly, we will affirm the denial of benefits by the Benefits Review Board.

Petitioner sought Black Lung benefits for the death of her husband. After a hearing, an ALJ denied her claim because the decedent was not a coal miner. The Benefits Review Board affirmed and petitioner appealed.

The decedent, Edward L. Wisor, was employed as a clay miner for approximately 33 years by Harbison-Walker Refractories in its clay mine in Woodland, Pennsylvania. He retired in 1958 and died in August 1969 at the age of 74. It is undisputed that for some years before his death, Mr. Wisor was totally disabled by pneumoconiosis.[1]

Evidence at the hearing disclosed that Mr. Wisor worked as a "header." His assignment was to dig, drill, and blast through rock and coal to reach deposits of clay in the company's underground mine. In the process, the decedent removed quantities of coal before reaching the clay. Consequently, he was exposed to and inhaled coal dust which led to pneumoconiosis and the decedent's disability.

The ALJ found that the purpose of the Woodland mine was the extraction and sale of clay. The coal taken from the mine was discarded or given to the company's employees for their personal use. The ALJ also noted that "Mr. Wisor was [not] involved in the preparation of coal, as the company did no more than remove whatever coal was in the path of the clay to be extracted." Therefore, the ALJ concluded that Mr. Wisor did not work in a coal mine and was not a coal miner under the terms of the Black Lung Act, 30 U.S.C. §§ 901, *et seq*. The Benefits Review Board agreed

---

1. Petitioner's claim had been denied on two previous occasions. However, the 1978 amendments to the Black Lung Act authorized a *de novo* review of previously denied claims. *See* 30 U.S.C. § 945 (1982).

that the decedent had not been a coal miner because "coal mining did not constitute a substantial part of the activity and exposure."

In this court, petitioner avers it is immaterial that the coal was merely a by-product of the company's clay mining business. She argues that decedent's work included substantial activity in the removal of coal and exposure to its dust. The Director, however, contends that Mr. Wisor did not work in a "coal mine," and that the Act applies only to those mines engaged in the commercial production of coal.

Congress enacted the Black Lung program to compensate coal miners disabled by pneumoconiosis. The House Report accompanying the 1977 amendments notes the increased risk of death of coal miners compared to other workers. H.R. 151, 95th Cong., 2d Sess. 2, *reprinted in* 1978 U.S. Code Cong. & Ad. News 237, 240.

The narrow occupational group to be covered by the Act is revealed in various phases of the report. As one example, the House Committee commented on desirable amendments to the original Act based in part on hearings held in coal mining regions. *Id.* at 241. At one point, while discussing appropriate requirements for benefits, the report noted that the so-called typical coal miner, because of both the one industry (coal) characteristic of his region and his socioeconomic circumstance, ... continues to work when his physical condition would indicate otherwise. *Id.* at 247.

In addressing the industries to be covered, the statutory language itself is restrictive. The Act provides that benefits are payable by "coal mine operators." 30 U.S.C. §§ 932(i)(1), 943(a) (1982). If payments are not made by that source, then

the federal government provides funds from the Black Lung Trust Fund established by the 1977 amendments.[2] The Fund is financed by a per tonnage excise tax on the sale of coal by coal mine operators. 26 U.S.C. § 4121 (1982).

A coal mine is defined as "an area of land and all structures ... used in, or to be used in, or resulting from, the work of extracting ... bituminous coal, lignite or anthracite ... and in the work of preparing the coal...." 30 U.S.C. § 802(h)(2) (1982). "Preparing" is given a broad description and includes "such other work of preparing such coal as is usually done by the operator of a coal mine." 30 U.S.C. § 802(i) (1982).

The Act's definition of "miner" or "coal miner" is: "[a]ny individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal...." 30 U.S.C. § 902(d) (1982).[3] The statute plainly requires work in or around a "coal mine" to establish eligibility for benefits. No other type of mine or mineral is mentioned in the statute. *See, e.g.,* 30 U.S.C. §§ 931, 932 (1982); *see also Southard v. Director,* 732 F.2d 66 (6th Cir.1984); *Louisville and Nashville R.R. Co. v. Donovan,* 713 F.2d 1243 (6th Cir.1983); *Amigo Smokeless Coal Co. v. Director,* 642 F.2d 68 (4th Cir.1981); *Montel v. Weinberger,* 546 F.2d 679 (6th Cir.1976); *Sexton v. Mathews,* 538 F.2d 88 (4th Cir.1976); *Roberts v. Weinberger,* 527 F.2d 600 (4th Cir.1975).

The definition of miner contains two elements—a "situs" test requiring work in a coal mine, and the second, a "function" component requiring performance of coal extraction or preparation work. Both of these requirements must be met. *See Southard v. Director; Amigo Smokeless Coal Co. v. Director.*

---

2. The Fund is required to pay benefits if there is no "responsible operator," if the operator is in default, or if the Secretary paid benefits with respect to claims in which the miner's last coal mine employment was before January 1, 1970. In cases in which the government had already paid benefits for periods of eligibility after January 1, 1974, the Fund must reimburse the government. 26 U.S.C. § 9501(d)(1) (1982); 30 U.S.C. § 932(i) (1982).

3. Significantly, the 1977 amendments to the Coal Miner's Safety Act broadened its general definition of coal mines to include "coal or other mines." However, the definition applicable to Subchapter IV (Black Lung Benefits) was restricted to "coal mines." 30 U.S.C. § 802(h)(1), (2) (1982).

Petitioner argues that eligibility for benefits under the Act requires only proof of substantial coal extraction and that it is irrelevant whether the coal is sold or given away. Petitioner cites *Montel v. Weinberger*, to support her argument. In that case, the claimant had been employed in a clay mine and the court upheld the denial of benefits, noting that "it is clear" that the statute is applicable to coal mines and persons employed there. By way of dictum, the court noted, "[w]e believe that for persons employed in a clay mine to qualify for black lung benefits, coal mining must constitute at least a substantial part of the activity and the exposure." *Id.* at 680.

▮ We do not read that case as does petitioner. To recover benefits under the Act, more than coal extraction or coal preparation work must be proven. A claimant must satisfy the situs test by showing that he was employed by a coal mining company. Although it is conceivable that a clay mining company engaged in substantial coal mining activity in addition to clay extraction, might under certain conditions be both a coal and clay mining company, those circumstances are not present here.

▮ We agree with the Director's contention that the definition of coal mines includes a commercial purpose requirement. *See, e.g., Southard; Amigo Smokeless Coal Co.; Roberts v. Weinberger.* This is underscored by the 1978 amendments to the Act establishing the Black Lung Disability Trust Fund to pay benefits when no coal mine operator is required to pay them or when the operator is in default. As noted earlier, that Fund is financed by an excise tax on "coal sold by the producer." 26 U.S.C. § 4121(a). The purpose of the amendment was to transfer the cost from the government to the coal industry. H.R. No. 438, 95th Cong., 2d

Sess. 2, *reprinted in* 1978 U.S.Code Cong. & Ad.News 72, 74.

▮ It would create an anomalous situation if employees of a clay mine were permitted to recover benefits from a Trust Fund totally subsidized by the coal mining industry. We find no evidence that Congress intended such a result.[4]

The Congressional Record reveals that Congress singled out coal miners as beneficiaries of black lung benefits despite the fact that workers in other industries were subject to occupational lung diseases equally debilitating. As Senator Allen remarked, a Bill was introduced to provide benefits for "red lung" incurred by miners in iron ore mines, "brown lung" for textile workers, and "white lung" for talc workers. *See* 124 Cong.Rec. 2335 (1978). Further discussion on the plight of non-covered workers occurs in the minority views to H.R. 151, 1978 U.S. Code Cong. & Ad. News at 293.

In *Montel v. Weinberger*, the court commented on efforts to widen the scope of the Act during debate on the 1972 amendments. At that time, an amendment enlarging the definition of "miner" to include persons who contracted pneumoconiosis from forms of dust other than coal was rejected. As the court noted, Congress could have broadened the coverage but "clearly it declined to do so." 546 F.2d at 680–81.

Our review of the statutory language and the legislative history persuades us that the extraction of coal as a by-product of clay mining in the circumstances of this case does not bring the activity within the definition of coal mining. Accordingly, we conclude that the Benefits Review Board properly refused to accept the claim. The petition for review will be denied.

---

4. It is interesting to note, however, that independent contractors engaged in transportation at a coal mine or in construction there may be required to post a bond or otherwise guarantee payment once an employee of theirs is determined to be eligible for benefits. 30 U.S.C. § 932(b) (1982). This provision is further evidence of congressional intention to limit the eligibility to receive benefits from the Trust Fund to employees of coal mining companies unless specifically provided otherwise. *Cf.* Louisville and Nashville Railroad v. Donovan, 713 F.2d 1243 (6th Cir.1983).