**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

v.

**ZIEGLER COAL COMPANY and Hazel Wheeler, Respondents.**

No. 87–2455.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1988.

Decided July 27, 1988.

Michael J. Denny, U.S. Dept. of Labor Office of the Sol., Washington, D.C., for petitioner.

Mark E. Solomons, Arter & Hadden, Pittsburgh, Pa., for respondents.

Before CUMMINGS, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Robert D. Wheeler ("Wheeler") was employed by Ziegler Coal Co. ("Ziegler") for over thirty-two years. Shortly after Wheeler's death, his wife, Hazel Wheeler, filed a claim for survivor's benefits under the Black Lung Benefits Act ("The Act"), 30 U.S.C. § 901 *et seq.* After conducting a formal hearing, the Administrative Law Judge ("ALJ") ruled that Ziegler was not a "responsible operator" under the Act, and that therefore the Black Lung Disability Trust Fund ("the Trust Fund") was liable for any survivor's benefits payable to Hazel Wheeler. Because the Director, Office of Workers' Compensation Programs ("The Director"), the legal representative of the Trust Fund, did not contest Hazel Wheeler's entitlement to benefits, the ALJ remanded the claim for the payment of benefits from the Trust Fund.[1] The Benefits

1. The Trust Fund was established by the Black Lung Benefits Reform Act of 1977 and is financed by a per tonnage excise tax on the sale of coal by coal mine operators. 26 U.S.C. § 4121. The Trust Fund is required to pay benefits if there is no responsible operator, if the operator is in default, or if the Secretary paid benefits with respect to claims in which the miner's last coal mine employment was before January 1, 1970. 30 U.S.C. § 934; *Wisor v. Director, Office of Workers' Compensation Programs,* 748 F.2d 176, 178 n. 2 (3rd Cir.1984). As

Review Board affirmed the ALJ's decision. The Director appeals arguing that Ziegler, not the Trust Fund, should be responsible for any benefits owed to Hazel Wheeler.[2] We affirm.

## I.

Wheeler worked for Ziegler from October 25, 1948 to March 20, 1981. Wheeler began his employment as a laborer in Ziegler's mines and worked in that capacity for over twenty years. On September 24, 1969 Wheeler was transferred, and from that date until his employment ended in 1981 he worked as an electrician in an electrical repair shop operated by Ziegler. In the shop, which serviced a number of Ziegler's mines, Wheeler's principal responsibility was repairing equipment brought from the mines.

On January 21, 1981 Wheeler filed an application for black lung benefits accompanied by evidence on the nature and length of his coal mine employment. In May, 1981 the Department of Labor notified both Wheeler and Ziegler of its initial finding that Wheeler was entitled to benefits once his employment with Ziegler ended. *See* 30 U.S.C. § 923(d) (miner determined to be eligible for benefits while engaged in coal mine employment is entitled to benefits if his or her employment terminates within one year). Ziegler timely controverted its liability as the responsible operator pursuant to 20 C.F.R. § 725.143(a). In May 1981 Wheeler died. Shortly thereafter Hazel Wheeler filed an application for survivor's benefits. Ziegler again contested its liability. The Deputy Commissioner issued a proposed decision on October 21, 1981. Ziegler then requested that the case be referred to the Office of Administrative Law Judges for a formal hearing. *See* 20 C.F.R. § 725.419.

By agreement of the parties, the proceeding before the ALJ was confined to determining whether Ziegler was a responsible operator for purposes of the Act. In general, the Act provides that black lung benefits owed to miners or their survivors are to be paid directly by the coal mine operator, which in this case would be Ziegler. 30 U.S.C. § 932(b). The Act, however, provides that "no benefit shall be payable by any operator ... (1) which did not arise, at least in part, out of employment in a mine during a period after December 31, 1969 when it was operated by such operator." 30 U.S.C. § 932(c). The applicable regulation is more specific, providing that "[i]n order for an employer to be considered a responsible operator ... (3) the miner's employment with the operator or other employer shall have included at least 1 working day after December 31, 1969." 20 C.F.R. § 725.492(c). The issue before the ALJ, and now before us, was whether Wheeler was a "miner" for purposes of the Act while working as an electrician in Ziegler's electrical repair shop beginning in September of 1969. If so, Ziegler would be a responsible operator liable for any survivor's benefits owed to Hazel Wheeler. If not, the benefits will be paid to Hazel Wheeler by the Trust Fund, because unlike Ziegler, the Director concedes that Wheeler's employment entitled his wife to survivor's benefits.

Although the critical issue before the ALJ was whether Wheeler was a "miner" on any day after 1969, very little evidence concerning the details of Wheeler's employment was submitted. Hazel Wheeler testified that the electrical repair shop where her husband worked after 1969 was located approximately one and one-half miles away from the nearest Ziegler coal mine. She also testified that Wheeler never went into the mines because any equipment in need of repair was always brought from the

discussed *infra,* Ziegler, unlike the Director, has not conceded that Hazel Wheeler is entitled to survivor's benefits. Accordingly, if Ziegler is determined to be a responsible operator, the case must be remanded so that Ziegler has an opportunity to contest the merits of Hazel Wheeler's eligibility for these benefits.

2. Our jurisdiction is based on 30 U.S.C. § 932(a). Section 932(a) incorporates 33 U.S.C. § 921(c) which provides for a direct appeal from a final decision of the Benefits Review Board, United States Department of Labor to "the United States court of appeals for the circuit in which the injury occurred." 33 U.S.C. § 921(c).

mines to the shop. There is no contrary evidence in the record, nor is there any specific evidence about Wheeler's coal dust exposure while working in the repair shop.[3] The Director was represented by counsel at the hearing, but did not introduce any evidence.

## II.

### A.

Under the Act, a "miner" is defined as "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal." 30 U.S.C. § 902(d).[4] *See also* 20 C.F.R. § 725.202 (1987). Courts which have interpreted this definition have observed that it consists of two components. *See, e.g., Foreman v. Director, Office of Workers' Compensation Programs,* 794 F.2d 569, 570 (11th Cir.1986); *Wisor v. Director, Office of Workers' Compensation Programs,* 748 F.2d 176, 178 (3rd Cir. 1984); *Southard v. Director, Office of Workers' Compensation Programs,* 732 F.2d 66, 69 (6th Cir.1984); *Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs,* 642 F.2d 68, 70 (4th Cir.1981). First, to be a miner the person must have worked "in or around" a statutorily defined coal mine or coal preparation facility ("the situs requirement"). Second, the person must have worked "in the extraction or preparation of coal" ("the function requirement").

On the basis of the evidence on Wheeler's work as an electrician, the ALJ ruled that Wheeler was not a miner on any day after 1969 because he had not worked in or around a coal mine or coal preparation facility and therefore failed to satisfy the situs requirement. The ALJ relied on *Siebert v. Consolidation Coal Co.,* 7 BLR 1–42 (1984). In *Siebert* the Benefits Review Board ruled that an individual who worked as a mechanic in a central repair shop more than a mile from the nearest actual mine site was not a miner under the Act. Finding Wheeler's situation to be directly analogous, the ALJ dismissed Ziegler as a party to the proceeding.

The Benefits Review Board affirmed the ALJ's decision. The Board did not reach the issue of whether Wheeler's activities satisfied the function requirement because it found that the ALJ correctly determined that the situs requirement was not met. The Board specifically rejected the Director's argument that the repair work done by Wheeler was so essential to the mining of coal that the repair shop was a mine situs under the Act, even though it was more than a mile from Ziegler's nearest coal extraction site. The Board reasoned that although electrical repair work "might arguably be necessary to the extraction and preparation process, it may still not be considered coal mine work when the relevant factor of 'distance' from an actual coal mine site to a facility is taken into consideration." *Wheeler v. Ziegler Coal Co.,* No. 85–1971 BLA, mem. op. at 3 (Benefits Review Bd. July 17, 1987) (citations omitted).

■ Our review is limited in scope. The Board is required to uphold the ALJ's decision if it "is rational, is supported by substantial evidence, and is in accordance with law." 33 U.S.C. § 921(b)(3) as incorporated by 30 U.S.C. § 932(a). We in turn "only determine if the Board properly exercised its standard of review." *Foreman,* 794 F.2d at 570 (citation omitted); *Consolida-*

---

3. Wheeler's application for benefits did include an employment history form in which he listed both his work as a laborer and as an electrician and then answered yes to the question: "Exposure to dust, gases, or fumes?"

The Director also points out that for purposes of determining whether a person is an "operator" under the Act, there is a rebuttable presumption that the employee was continuously exposed to coal dust during his or her employment. 20 C.F.R. § 725.992(c) (1987).

4. The statute provides:

The term "miner" means any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d).

*tion Coal Co. v. Chubb,* 741 F.2d 968, 971 (7th Cir.1984); *Amigo,* 642 F.2d at 69.

### B.

On appeal, the Director renews his argument that the crux of the definition of a miner is that the activity be "integral to the mining process." Appellant's Br. at 19. The Director acknowledges that under his reading "the 'situs' requirement has a functional component," but argues that Congress intended to cover individuals, regardless of the distance from their workplace to the extraction site, as long as their employment was integral to the extraction and preparation of coal. *Id.* at 17. In the Director's view, Wheeler's work in the electrical repair shop satisfied this requirement and he was therefore a miner for purposes of the Act.

Ziegler argues that the Director's position essentially reads the situs requirement out of the statutory definition. Ziegler reasons that if the situs requirement looks solely to the function of the work, it is redundant in light of the function requirement and has no independent force. The Director counters by claiming that the purpose of the situs requirement is to insure that the activity engaged in by the operator is the mining and processing of coal, not some other mineral, and does not depend on "the geographical peculiarities of a company's operations." *Id.* at 20. In the Director's view, the situs test looks to the employer's use of the coal while the function requirement focuses on the employee's job. *See Wisor,* 748 F.2d 176 (a clay miner was not a "miner" under the Act even though his job involved substantial coal dust exposure; the clay mine did not constitute a coal mine because the coal that was removed was not used for a substantial commercial purpose).

5. The full text of 30 U.S.C. § 802(h)(2) provides: For purposes of subchapters II, III, and IV of this chapter, "coal mine" means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under or above the surface of

### III.

The statutory definitions applicable to this case are both detailed and difficult. As previously noted, under the situs requirement the individual must work or have worked "in or around a coal mine or coal preparation facility." A "coal mine" in turn is broadly defined as "an area of land and all structures [and] facilities ... placed upon, under or above the surface of such land by any person, used in ... or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or methods, and the work of preparing the coal so extracted...." 30 U.S.C. § 802(h)(2).[5] Therefore, under the Act a "coal mine" encompasses more than just the underground tunnels or the open excavations from which the coal is initially extracted. It also includes facilities which are used "in the work of" (1) "extracting" or (2) "preparing" the coal. An analysis of the function of the facility is therefore required to determine whether it constitutes a coal mine under the Act. The definition, however, further distinguishes between extracting and preparing coal and imposes a geographical requirement on the former, but not the latter. We first address the extraction prong of the definition and its application to this case and then turn to the preparation prong.

### A.

#### 1.

The statutory definition of a coal mine plainly contemplates that the facilities used in the work of extracting coal must be located on or below the area of land where the coal is actually extracted from its natural deposit. Section 802(h) speaks in terms of "an area of land" and facilities "placed upon ... the surface of such land" used "in the work of extracting *in such area* [coal]

such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or methods, and the work of preparing the coal so extracted, and includes custom coal preparation facilities.

... from its natural deposits." (Emphasis added). The statutory definition therefore contains a geographical component; the facility must be on or below the area of land where coal is naturally found and is being extracted.

The director relies on *Skipper v. Mathews,* 448 F.Supp. 300 (M.D.Pa.1977) in support of his broader functional approach. In *Skipper* the district court held that a central repair shop used to repair coal mine equipment was a "coal mine" for purposes of the Act. The court ruled that although the repair work did not in itself involve the extraction of coal, properly functioning equipment was essential to coal mining and this was sufficient to satisfy the requirement that the facility be used in "the work of" extracting coal. *Id.* at 302. While acknowledging that the statutory language states that the "facilities must be used in the extraction of coal *'in such area,' "* the court went on to say that it was "not concerned by the fact that the [repair shop was] not in the immediate area of a coal mine," because the legislative history of § 802 indicates that the definition of a coal mine should be read broadly. *Id.* at 302–03 (emphasis added).

There is no indication in *Skipper* how far from the actual extraction site the relevant repair shop was located, and it is possible to read the opinion as merely construing the term "the area" broadly, as demonstrated by the district court's use of the phrase "immediate area." If this is not what the district court intended, however, we must respectfully disagree with its analysis. Even if the legislative history indicates that the term "coal mine" is to be generously construed from the employees' perspective, this does not justify disregarding the statutory language which speaks in terms of the area in which coal is being extracted. The reading of *Skipper* advocated by the Director is not in our view persuasive authority.

The Director also asserts that Congress could not have intended different results under the Act depending on whether the building in which an individual performed electrical repair work on mining equipment was located on the extraction site or away from the site. The Director specifically and repeatedly states that the amount of coal dust exposure is not relevant to determining whether an employee is a miner under the Act. The concern that must underlie his functional approach to the situs requirement, however, is that employees working in central repair shops and similar positions are exposed to coal dust as a byproduct of their job. The dust arises derivatively from the equipment on which they work, not from the actual extraction site itself. Accordingly, the employees' derivative exposure occurs wherever the work is done and a functional approach to the definition of coal mine is necessary to assure that these workers will be fully covered by the Act.[6]

We recognize that this is a very serious concern, but it is difficult to square a rule focusing on derivative coal dust exposure with the statutory language. Congress specifically used the language "in or around a coal mine" and further defined the extraction prong of a coal mine to focus on the extraction site. This indicates that Congress did contemplate a distinction of the type the Director posits. In addition, this distinction is not unreasonable if Congress' primary concern was dust exposure incidental to working around the actual ex-

---

**6.** To recover benefits under the Act, the employee must either satisfy one of certain enumerated presumptions of causation or affirmatively show a causal relationship between his or her coal mine employment and pneumoconiosis. *See* 30 U.S.C. § 921(c)(1)–(5); 20 C.F.R. § 718.208(a) (it must be determined "that the miner's pneumoconiosis arose at least in part out of *coal mine employment.*") (emphasis added); *Southard,* 732 F.2d at 70. For example, there is a presumption of causation if an individual who has contracted pneumoconiosis shows that he or she "was employed for ten years or more in one or more *coal mines.*" 30 U.S.C. § 921(c)(1). *See* 20 C.F.R. § 718.203(b) (1987). Afflicted miners employed less than ten years "in the nation's coal mines" satisfy the causation requirement "only if competent evidence establishes a [causal] relationship" between that employment and pneumoconiosis. 20 C.F.R. § 718.203(c) (1987).

traction site itself.[7] As a general proposition, the amount of coal dust to which an individual is exposed will be higher if he or she works at one of these sites. Indeed, the Director specifically states that "[i]t is certainly true that individuals located away from the extraction site may be exposed to a significantly smaller risk of contracting totally disabling pneumoconiosis." Appellant's Br. at 22. Both the statutory language and a common sense approach to the provision indicate that the situs requirement demands more than a mere functional inquiry. We must therefore reject the Director's position that distance is not a proper factor to be considered in determining whether a person has worked in or around an extraction site.

### 2.

■ Having concluded that geographical distance from an extraction site is a proper factor to be considered in determining whether the situs requirement has been satisfied, we turn to the application of the rule to Wheeler's case. As previously discussed, the definition of a miner includes individuals who work "in *or around* a coal mine." What constitutes "around" a coal mine is a difficult question and we caution against an inflexible fixed-distance rule. Rather, we believe that this phrase was intended to insure that employees who worked in facilities which were technically adjacent to the actual extraction site, would not be denied coverage if their normal duties brought them in frequent contact with the extraction site and the accompanying dust exposure. *See generally Stroh v. Director, Office of Workers' Compensation Programs,* 810 F.2d 61 (3rd Cir.1987) (self-employed hauler who transported coal from mines to independently owned coal processing plants worked in and around

coal mines); *Amigo,* 642 F.2d 68 (plaintiff collected coal samples from mine sites and the coal cleaning plant for testing worked in and around coal mines).[8] This determination will be intensively fact dependent.

In this case, the record contains remarkably little evidence about the physical relationship between the repair shop and Ziegler's extraction site. The only evidence presented was Hazel Wheeler's testimony that the repair shop where her husband worked was over a mile and one-half from what she referred to using "common parlance" as the nearest Ziegler coal mine, and that her husband never went into this or any other mine once he began working as an electrician. The Director had a full opportunity to contest Hazel Wheeler's testimony and present contrary evidence, but did not do so. Although the record is not as fully developed as it might be, this is largely due to the strategic decision made by the Director at the hearing. We hold that the ALJ's decision that Wheeler did not work in or around an extraction site is in accordance with law and is supported by substantial evidence.

### B.

■ In contrast to the extraction prong of the statutory definition of a coal mine, the preparation prong has no geographical component. As previously stated, a coal mine includes facilities "used in, ... or resulting from ... the work of preparing the coal so extracted." 30 U.S.C. § 802(h). The phrase "the work of preparing the coal" is specifically defined to mean "the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing, and loading of bituminous coal, lignite, or anthracite, and such other work of preparing such coal as is usually done by the operator of the coal mine." 30 U.S.C. § 802(i). In other words,

---

**7.** One commentator has observed that the extension of the definition of a miner to include surface miners and certain transportation and coal mine construction workers should be reevaluated because "the incidence of pneumoconiosis among [these] workers has never been shown to be significant." Lopatto, *The Federal Black Lung Program: A 1983 Primer,* 85 W.Va.L. Rev. 677, 703 (1983).

**8.** In *Amigo* the Fourth Circuit concluded that collecting and testing samples constituted work in preparing the coal. *Amigo,* 642 F.2d at 71. As discussed below, the testing facility itself would therefore be considered a coal mine under the Act. *See infra* section III.B. The Fourth Circuit nonetheless specifically emphasized that the plaintiff's work required him to work in and around the extraction site. *Id.*

the preparation of coal involves what is done to the coal after it is extracted from its natural deposit and prior to its retail distribution and consumption. *Southard,* 732 F.2d at 69. Although for practical purposes coal preparation will probably occur close to the extraction site, there is no locational requirement in this definition; a facility used in the preparation of coal, wherever it is located, constitutes a coal mine under the Act.[9] *See Foreman,* 794 F.2d at 571 (court not aware of any requirement that coal be prepared on the mine site in order for the preparation facilities to constitute a coal mine); *Southard,* 732 F.2d at 69 (observing in dicta that " 'coal mine' is basically defined by the work that is performed" and is "inextricably related to function"). *See also Dowd v. Director, Office of Workers' Compensation Programs,* 846 F.2d 193 (3rd Cir.1988) (plant which purchased unprocessed anthracite, dried it, ground it, and bagged it was a "coal preparation facility" under 30 U.S.C. § 902(d)).[10]

Neither the Benefits Review Board nor the ALJ considered whether the central repair shop where Wheeler worked was a facility engaged in the work of preparing coal. The Board ruled that even if the work at the shop was "arguably ... necessary" for the preparation process, "it may still not be considered coal mine work when the relevant factor of 'distance' from an actual coal mine site to a facility is taken into consideration." *Wheeler v. Ziegler*

*Coal Co.,* No. 85-1971 BLA, mem. op. at 3 (Benefits Review Bd. July 17, 1987)

This is incorrect. If the repair shop was used in the work of preparing coal, then under the definition of a coal mine found in § 802(h)(2), the repair shop itself was a coal mine. It is therefore impossible to determine whether Ziegler is the responsible operator without reaching the issue of whether Ziegler's electrical repair shop was a facility used in the work of preparing coal. We conclude that it was not.

Section 802(i) (quoted above) defines "the work of preparing the coal" in great detail. A close review of this subsection indicates that the electrical repair work done at the Ziegler repair shop, if it is to be found in this definition, would have to be considered "such other work of preparing *such coal* as is usually done by the operator of the coal mine." 30 U.S.C. § 802(i) (emphasis added). This, however, is not a viable reading of the provision. Section 802(i) focuses on what is done to the coal itself, specifically enumerating tasks such as crushing and washing the coal. The classic example of a facility used in the work of preparing the coal is the tipple, where extracted coal is cleaned and loaded into railroad cars. In contrast, the Ziegler repair shop deals only with the equipment used in mining; it is one-step removed from those facilities used to perform work directly on the extracted coal. We recognize that a repair shop might be essential to an efficient mining operation, but this alone is insufficient to satisfy § 802(i). We hold that Ziegler's

9. "Coal preparation facility" as used in the definition of a "miner" is for all practical purposes encompassed within the definition of "coal mine." A coal mine is defined to include facilities used in "the work of preparing the coal." There does not appear to be any difference between this and a coal preparation facility. Because the Director argues that Ziegler's electrical repair shop satisfied the statutory definition of "coal mine," for convenience we also speak in terms of coal mine instead of coal preparation facility.

10. A number of cases have held that an individual exposed to substantial amounts of coal dust was not entitled to black lung benefits on the ground that the coal preparation process was complete and therefore the individual was not a miner under the Act. *See, e.g., Collins v. Di-*

*rector, Office of Workers' Compensation Programs,* 795 F.2d 368 (4th Cir.1986) (individual drove truck which hauled slate away from the tipple); *Eplion v. Director, Office of Workers' Compensation Programs,* 794 F.2d 935 (4th Cir. 1986) (employee exposed to "a tremendous amount of coal dust" in his job of knocking open doors to railroad cars so coal could be loaded into barges); *Foreman,* 794 F.2d 569 (boiler room operator carted, wet down, and shoveled coal at ore mine power plant); *Southard,* 732 F.2d 66 (employee unloaded coal from railroad cars into trucks for coal retailers); *Sexton v. Mathews,* 538 F.2d 88 (4th Cir.1976) (employee shoveled coal into coke oven); *Johnson v. Weinberger,* 389 F.Supp. 1296 (S.D.W.Va. 1974) (employee at chemical plant operated a coal crusher).

electrical repair shop was not a facility used in the work of preparing the coal and therefore Wheeler was not a miner because he did not work in or around a coal mine.[11] The Benefits Review Board's decision is AFFIRMED.

---

**11.** We hold only that the electrical repair shop was not a *facility* used in the preparation of coal for purposes of the definition of a coal mine. We express no opinion as to whether repair work done at the extraction site, the tipple or some similar facility would constitute work in the extraction or preparation of coal for purposes of the function requirement found in the definition of a miner. Numerous cases have observed that this requirement should be broadly construed. *See, e.g., Amigo,* 642 F.2d 68 (collecting and testing samples from mine site and cleaning plant was work in preparing the coal); *Freeman v. Califano,* 600 F.2d 1057, 1060 (5th Cir.1979) (noting that maintaining railroad tracks within an extraction site is "not strictly speaking 'extraction' or 'preparation'" but observing that § 921(C)(1)'s presumption liberally applied "to those involved in ancillary activities necessary to the extraction and preparation of coal if such activities are conducted within a 'coal mine'"); *Adelsberger v. Mathews,* 543 F.2d 82 (7th Cir.1976) (work underneath the tipple weighing coal and switching grates and railroad cars constituted work in preparing the coal); *Roberts v. Weinberger,* 527 F.2d 600 (4th Cir. 1975) (driving truck from strip mine to the tipple was part of the process of extracting and preparing the coal).