AMAX COAL COMPANY, Petitioner,

v.

Hershell C. FAGG and Director, Office of Workers' Compensation Programs, Respondents.

No. 88-1557.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 1988.

Decided Jan. 25, 1989.

W.C. Blanton, Ice Miller Donadio & Ryan, Indianapolis, Ind., for petitioner.

Paul Frieden, U.S. Dept. of Labor/SOL/EBN-2620, Washington, D.C., for respondents.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Upon referral from the Office of Workers' Compensation Programs, ("OWCP"), an Administrative Law Judge ("ALJ") awarded respondent, Hershell C. Fagg, black lung benefits and found petitioner, Amax Coal Company ("Amax"), to be liable for their payment. The Benefits Review Board, United States Department of Labor ("Board") affirmed the ALJ's decision on February 29, 1988. Amax appeals the ALJ's decision, which was adopted as final by the Board, that Mr. Fagg was a miner after December 31, 1969 within the meaning of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901 *et seq.*, so that Amax was a "responsible operator" liable for payment of his claim. We deny the petition for review.

I. *Factual background.*

Hershell C. Fagg worked for approximately thirty-eight years between 1935 and 1973 at surface coal mines. In 1973, he took a leave of absence to become a district representative for the United Mine Workers of America. On March 7, 1983, he retired from that position. Fagg worked for Amax from March 1962 to February 6, 1973. From 1968 until 1973, Fagg operated a bulldozer to reclaim land which had been strip mined. The reclamation work done by Fagg brought him close, 125-250 feet, to the open pit.

The strip mining process includes removing refuse and dirt from the top of the coal seam on one side of an open pit and placing it on the other side to form a spoil bank. Mr. Fagg's job was to level off the spoil bank, so that the land could be seeded and turned over to the farm division of the coal company. Mr. Fagg testified that he would be bulldozing the length of the spoil bank at the same time that more land was

---

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

being stripped and new spoil was being dumped on the bank.

It is conceded that Amax was required by law to do reclamation work during the time Mr. Fagg did reclamation bulldozing. However, coal can be and was extracted without reclaiming the land prior to the passage of the state and federal laws requiring reclamation.

Mr. Fagg filed a federal black lung claim on March 4, 1980, and the OWCP found initially on August 20, 1980 that he was entitled to benefits and Amax was liable to pay them. The OWCP affirmed its decision that Amax was liable on August 31, 1981 and Amax requested a hearing before an ALJ. After the case was assigned to an ALJ, Amax filed a Motion for Summary Decision on May 29, 1985 arguing that Mr. Fagg was not a "miner" within the meaning of the statute at any time after December 31, 1969 and that Amax, therefore, could not be a "responsible operator" pursuant to 20 C.F.R. § 725.492.

The ALJ denied Amax's motion on June 11, 1985 reasoning that Mr. Fagg's work formed an integral part of the extraction of coal, since under the law the process of extraction would cease if the reclamation ceased. After holding a hearing on June 19, 1985, the ALJ affirmed the earlier decision and also found that Mr. Fagg was entitled to benefits because the presumption of disability set forth in 20 C.F.R. § 727.203(a)(2) and (a)(4) was not rebutted by the available evidence. As previously indicated, the Board on February 29, 1988 affirmed the ALJ's decision that Mr. Fagg was a miner and that Amax was liable for the benefits. Amax seeks review of that order.

## II. Standard of review.

The "findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3) (1982) as incorporated by 30 U.S.C. § 932(a). We must also ask whether the decisions of the ALJ and the Board are rational and in accordance with the law. *O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc.,* 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); *Strike v. Director, OWCP,* 817 F.2d 395, 406 (7th Cir.1987).

## III. Analysis.

The issue before us is whether Mr. Fagg's work for Amax as a reclamation bulldozer operator after December 31, 1969 qualified him as a "miner," so that pursuant to 20 C.F.R. § 725.492(a)(3) (1988) Amax is a "responsible operator." [1] The term "miner" is defined as "any individual who works or has worked in or around a coal mine or a coal preparation facility in the extraction or preparation of coal." 30 U.S.C. § 902(d) (1982). *See also* 20 C.F.R. § 725.202 (1988).

In interpreting this definition, courts have applied a twopart test looking to (1) the situs of a claimant's work and (2) the function performed by the claimant in his or her work. *See Mitchell v. Director, OWCP,* 855 F.2d 485, 489 (7th Cir.1988) and the cases cited therein. In order for Amax to be liable for Mr. Fagg's benefits, his work as a reclamation bulldozer operator after December 31, 1969 must meet this test.

Amax concedes that Mr. Fagg met the situs test while he was doing reclamation work at Amax's mine. The broad definition for "coal mine" found at 30 U.S.C. § 802(h)(2) [2] covers Mr. Fagg's work which

---

**1.** The question in the case is *not* whether or not Mr. Fagg will be awarded benefits, but only who is liable for them. If Amax were found not to be a "responsible operator," then the Director admits that the OWCP, Department of Labor would be liable for payment since there is no question that Mr. Fagg was a "miner" prior to 1970. Brief of Respondent at 10, n. 8. Payment would be from the Black Lung Disability Trust Fund which pays benefits "if there is no responsible operator, if the operator is in default, or if

the Secretary paid benefits with respect to claims in which the miner's last coal mine employment was before January 1, 1970." *Director, OWCP v. Ziegler Coal Co.,* 853 F.2d 529, 530 n. 1 (7th Cir.1988) (citing 30 U.S.C. § 934; *Wisor v. Director, OWCP,* 748 F.2d 176, 178 n. 2 (3rd Cir.1984)).

**2.** The statutory definition is:

an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes,

brought him close to the open pit. The sole issue before us, therefore, is whether or not his work met the function test.

Pursuant to the statutory definition of miner, a claimant's function must involve "the extraction or preparation of coal." Coal preparation is defined in the Federal Coal Mine Health and Safety Act of 1969 as "the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing, and loading of bituminous coal, lignite, or anthracite, and such other work of preparing such coal as is usually done by the operator of the coal mine ..." 30 U.S.C. § 802(i) (1982). We have found the work of preparation to include that of an employee who acted as an intermediary between the office and other miners to direct the switching of grates and railroad cars underneath the coal tipple, to determine what kind of coal was prepared and to whom it was shipped, and to weigh the coal shipped by rail and truck. *Adelsberger v. Mathews*, 543 F.2d 82, 84 (7th Cir.1976). In addition, the Fourth Circuit has found that a laboratory technician who spent 85% of his time at mining sites and a cleaning plant collecting samples of coal for processing and analysis was involved in the preparation of coal. *Amigo Smokeless Coal Co. v. Director, OWCP*, 642 F.2d 68, 71 (1981).

Amax argues that only work which is related to the actual physical extraction or preparation of coal may be considered mining work. Brief of Petitioner at 19 (citing *Eplion v. Director, OWCP*, 794 F.2d 935 (4th Cir.1986)) (individual who transported processed coal to barges for delivery to customers did not satisfy the "function test," even though the customer again washed the coal, because the coal was processed and prepared for market before he came in contact with it). Reclamation work, argues Amax, does not fit within the statutory definition of "work of preparing coal," and "extract," which is not defined in the statutes or regulations, "must be given its ordinary and common meaning"

which does not include reclamation. Brief of Petitioner at 18 (citations omitted).

The ALJ, in his June 11, 1985 order, relied on Board precedent to arrive at an expansive definition for the word "miner." He wrote that "the duties performed must simply bear a reasonable relationship to the overall process of coal mining." Appendix of Petitioner at 21 (citing *Moore v. Duquesne Light Co.*, 4 Black Lung Rep. 1–40.2 (Ben.Rev.Bd.1981)). He then found the present case to be governed by *Moore*, a case in which the Board found that a safety inspector's duties were a necessary part of the preparation or extraction of coal because the inspector prevented imminent dangers from shutting down the mining process. The ALJ also found that the act of reclamation may in fact be a real part of the activity of "extraction" itself, since "in this instance a mandatory part of the separation process is to restore the integrity of the whole ..." Appendix of Petitioner at 22.

We have not in the past attempted to make a precise definition of preparation and extraction in deciding what is or is not the work of a "miner." *Mitchell*, 855 F.2d at 490. In addition, the narrow definition that Amax would have us apply is contrary to the remedial purposes of the Black Lung Benefits Act, *Amax Coal Co. v. Anderson*, 771 F.2d 1011, 1015 (7th Cir.1985), and to the broader definition we and other courts have applied to the word "miner." Finding that a claimant who did railroad work to transport coal out of a mine was a "miner," the Fifth Circuit wrote that such work "is not strictly speaking 'extraction' or 'preparation,'" but that "recent cases have applied § 921(c)(1) [the section which creates the presumption of black lung when a claimant has worked as a "miner" for ten years] liberally to those involved in ancillary activities necessary to the extraction and preparation of coal if such activities are conducted within a 'coal mine' as de-

---

tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal,

lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, ...
30 U.S.C. § 802(h)(2) (1982).

fined in the regulation." *Freeman v. Califano,* 600 F.2d 1057, 1060 (5th Cir.1979) (citation omitted).

In arriving at a test for what is or is not the work of a miner, courts have distinguished between work accomplished before and after the finished coal product enters into the stream of commerce. *Cf. Mitchell,* 855 F.2d at 490 (cleaning railroad cars so that they could be loaded with new coal at the preparation plant is mining work); *Stroh v. Director, OWCP,* 810 F.2d 61 (3rd Cir.1987) (buying coal from independent miners and hauling it to independently owned coal processing plants is mining work) to *Eplion v. Director, OWCP,* 794 F.2d 935 (4th Cir.1986) (transporting processed coal to barges for delivery to customers is not mining work since the coal was a finished product before the claimant came into contact with it); *Southard v. Director, OWCP,* 732 F.2d 66 (6th Cir.1984) (unloading processed coal from railroad cars and delivering it to consumers is not mining work); *Foreman v. Director, OWCP,* 794 F.2d 569 (11th Cir.1986) (handling processed coal in boiler room of a power plant was not mining work). *See also Hanna v. Director, OWCP,* 860 F.2d 88, 92–93 (3rd Cir.1988) (removal of coal from tipple is mining work since it is "a step, if only the very last step, in the preparation of coal"). It is noteworthy that in all cases finding work not to be mining work, the activity took place after the finished coal had entered the stream of commerce.

Amax cites *Collins v. Director, OWCP,* 795 F.2d 368 (4th Cir.1986) and argues that that court's application of the function test governs this case. In *Collins,* the court found that the work of hauling slate away from the tipple was not mining work, because "the tipple marks the demarcation point between the mining and the marketing of coal." *Id.* at 372. In addition, the court noted that slate is only a by-product of coal mining, so its transport could not be mining. Amax argues that spoil is a mere by-product of coal mining, as is slate, and that therefore the work of leveling it out is

not mining. While there are similarities, we find the present case distinguishable from *Collins* because Mr. Fagg's work was part of the process of extraction and preparation which took place well before the coal reached its final form, whereas the *Collins* court found that the removal of the slate from the tipple takes place after the extraction and preparation process has been completed. As a result, it is irrelevant that Mr. Fagg was not working directly with coal but with spoil. *See Pinkham v. Director, OWCP,* 7 Black Lung Rep. 1–55, 1–57 (Ben.Rev.Bd.1984) (delivering supplies and maintaining equipment was mining work, even though the claimant was not directly involved with coal); *Tobin v. Director, OWCP,* 8 Black Lung Rep. 1–115, 1–117 (Ben.Rev.Bd.1985) (repairing and demonstrating mining equipment is mining work).

The Director urges us to adopt a definition for miner which asks "whether an individual's activities are integral to the extraction or preparation of coal, not whether they involve only the actual extraction or preparation." Brief of Respondent at 13. In *Mitchell,* we wrote that the claimant's railroad car cleaning "was indispensable to Old Ben's preparation of finished coal." 855 F.2d at 490. Strictly speaking, we cannot say that Mr. Fagg's reclamation work was integral or indispensable to the preparation or extraction of coal, since coal mining was certainly conducted for years without reclamation. On the other hand, Mr. Fagg's reclamation work is part of the extraction and preparation process as it is now practiced, just as much as is railroad car cleaning, directing the switching of grates and railroad cars and supervising the weighing of coal, or maintaining mining equipment. Although we are mindful of our responsibility to give terms their ordinary and common meanings, *Perrin v. United States,* 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), we find that "work in the extraction or preparation of coal" includes all work which is part of the modern commonly-applied process of extracting and preparing coal.[3]

3. Amax argues that reclamation work, unlike

mine inspection (*Moore v. Duquesne Light Co.,* 4

Amax complains that extending the "definition of 'miner' by a step-by-step movement away from the core concept of actual physical extraction or preparation of coal" will "lead to the result that *everyone* employed by a coal mine operator at a coal mine ... is thus a 'miner,' thereby rendering the test meaningless." Brief of Petitioner at 25 (emphasis in original). This *reductio ad absurdum* is unpersuasive, however, since some work at a mine site done after the coal reaches a marketable state is clearly distinguishable.

Mr. Fagg's work was carried out alongside a working strip mine. He was bulldozing spoil at the same time that new coal was being mined in the pit beside him. His work was related to the extraction of the coal well before the coal reached the final form in which it was marketed. As a result, we find that his work classified him as a "miner" after December 31, 1969 for purposes of 30 U.S.C. § 902(d).

IV. *Conclusion.*

Because we find that the Board correctly determined that Hershell C. Fagg's work as a reclamation bulldozer operator for Amax after December 31, 1969 fell within the statutory definition of "miner," Amax's petition for review is denied.

Black Lung Rep. 1–40.2 (Ben.Rev.Bd.1981)), or equipment maintenance (*Pinkham v. Director, OWCP*, 7 Black Lung Rep. 1–55, 1–57 (Ben.Rev. Bd.1984)), was not necessary to the coal mining process. Although we agree that reclamation is not absolutely necessary in the sense that mining would cease without it, mining could also continue without mine inspectors or without some of the equipment whose maintenance has been found to be mining work. Those positions are not clearly necessary to mining in the same way that reclamation is not. We do not, therefore, find that the "necessity" test distinguishes this case from others in which ancillary tasks were found to be mining work.