FILED
United States Court of Appeals
Tenth Circuit

March 26, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THE WACKENHUT CORPORATION,

Petitioner,

v.

GLORIANNA HANSEN, o/b/o Eldon A.
Hansen, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

Respondents.

No. 12-9595
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

The Wackenhut Corporation seeks review of a decision by the United States

Department of Labor Benefits Review Board (Board) affirming an award of black

lung benefits to Eldon Hansen. It contends Hansen is not eligible for benefits

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

because his work as a security guard did not qualify him as a "miner" under the Black Lung Benefits Act, 30 U.S.C. §§ 901-944 (BLBA). We affirm the award of benefits.[1]

I

Hansen worked for Wackenhut as a security officer at several coal mines.[2] From 1984 to 1985, his work included patrolling mine-sites, inspecting coal-conveyer tubes for fire hazards, and ensuring that train-cars were loaded to their proper weight. From 1985 until 1994, Hansen worked at the Black Thunder Mine, where he spent 25% of his time at the guard-shack and the rest performing other duties outdoors. The guard-shack was located 100 yards from the primary crusher and 200 yards from the train load-out facility. Hansen's duties varied but included admitting mine supervisors and contractors to the premises, patrolling the mine for safety violations and trespassers, and walking the open pit looking for coal-fires. Additionally, he was charged with inspecting mining equipment, checking the operation of water pumps in the mine pit, and generally looking at the overall safety of the mine.

In 2001, Hansen filed his claim for benefits. An administrative law judge (ALJ) denied it, finding Hansen not to be a "miner" as defined by the BLBA. The

[1]    Our jurisdiction derives from 33 U.S.C. § 921(c).

[2]    Hansen passed away in 2009, during the litigation of this claim. His surviving spouse, Glorianna Hansen, was added as a party on his behalf.

Board vacated that decision and remanded to allow the ALJ to explain why some of Hansen's duties did not qualify him as a miner.[3]

On remand, the ALJ reversed course and determined some of Hansen's work qualified him as a miner. That came from a consideration of Hansen's job description, his testimony, and the testimony of Wackenhut's branch manager. The ALJ then compared Hansen's duties to the job descriptions of a security guard and mine inspector, as listed in the Dictionary of Occupational Titles, observing that the latter qualifies as a "miner" under Board precedent, *see, e.g., Bartley v. Dir., Office of Workers' Comp. Programs*, 12 Black Lung Rep. (Juris) 1-89, 1988 WL 232708, at *2 (Ben. Rev. Bd. 1988). Finding sufficient overlap between Hansen's duties and those of a mine inspector, the ALJ decided Hansen was eligible for benefits as a miner because his duties "[were] an integral part of the preparation or extraction of coal." Admin. R., Vol. 1 at 89 (internal quotation marks omitted).

The Board affirmed the award of benefits; it considered the ALJ's decision to be rational, supported by substantial evidence, and in accord with applicable law. In particular, the Board concluded the ALJ had "acted within his discretion in determining that [Hansen] performed tasks that, like those of a mine inspector, were integral to the extraction or preparation of coal, as they ensured the safety of mining operations." *Id.* at 4. Wackenhut now petitions this court for review.

---

[3]     Wackenhut attempted to appeal to this court, but we dismissed its petition for lack of jurisdiction because the remand order was not a final decision. *See Wackenhut Corp. v. U.S. Dep't Labor*, No. 10-9506 (10th Cir. Apr. 23, 2010).

We review legal issues de novo and the ALJ's factual findings for substantial evidence. *Bridger Coal Co. v. Dir., Office of Workers' Comp. Programs*, 669 F.3d 1183, 1190 (10th Cir. 2012). We do not reweigh the evidence, but examine only whether the evidence supports the ALJ's findings of fact. *See Energy W. Mining Co. v. Oliver*, 555 F.3d 1211, 1217 (10th Cir. 2009). In conducting our review, we are mindful that the BLBA "is intended to be remedial in nature, and doubts should be resolved in favor of the disabled miner or his or her survivors." *Bridger Coal*, 669 F.3d at 1190 (internal quotation marks omitted).

The BLBA defines a miner as "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal." 30 U.S.C. § 902(d); *see also* 20 C.F.R. § 725.202(a). Courts interpret this definition as a two-part test in which "an individual must establish . . . : (1) [work] in or around a statutorily defined coal mine (the 'situs' test), 30 U.S.C. § 802(h)(2), and (2) . . . duties involv[ing] the extraction or preparation of coal, or involv[ing] appropriate coal mine construction or transportation (the 'function' test)." *Falcon Coal Co. v. Clemons*, 873 F.2d 916, 921 (6th Cir. 1989). Only the second part of the test is in dispute here.

Under the terms of the BLBA, a claimant's function must involve the extraction or preparation of coal. But consistent with the statute's remedial purpose, courts have applied a broad definition to the term "miner," including within its

- 4 -

meaning workers who perform duties incidental to the extraction or preparation of coal, so long as their work is "an 'integral' or 'necessary' part of the coal mining process." *Id.* at 922; *see also Amax Coal Co. v. Fagg*, 865 F.2d 916, 918 (7th Cir. 1989) (recognizing the broad definition of a "miner" includes workers "involved in ancillary activities necessary to the extraction or preparation of coal" (internal quotation marks omitted)). Duties necessary to the procurement of coal or keeping the mine operational satisfy the function test, but duties merely convenient or helpful to the operation of a mine do not. *See Falcon Coal*, 873 F.2d at 922-23 ("[T]hose individuals who handle raw coal or who perform tasks necessary to keep the mine operational and in repair are generally classified as 'miners.'"); *Freeman v. Califano*, 600 F.2d 1057, 1060 (5th Cir. 1979) (recognizing availability of benefits to "those involved in ancillary activities necessary to the extraction and preparation of coal").

According to the ALJ, Hansen satisfied the function test because he performed duties integral to the extraction and preparation of coal. This decision is supported by substantial evidence. Early in his career, Hansen worked in the "train room," where he would summon empty coal train-cars, weigh them, load them, and weigh them again to ensure they were not overweight. Aplt. App. at 43-44; Admin. R., Vol. 2 (Dir. Ex. 4). Since that time, his duties also have included patrolling mine sites and inspecting coal-conveyor tubes for fire hazards. At the Black Thunder Mine, where he patrolled on foot and by truck, he would inspect the pit—an active mining area—every hour looking for fires in the coal. Four times per shift, he would

inspect the coal-conveyer tubes to ensure there were no fire-hazards from methane or coal dust build-up. He also would inspect the pit's water pumps to ensure they were operating properly and there was no flooding.

Additionally, he inspected shovels, drills, and fire extinguishers, filling as many as 100 extinguishers in a day, if necessary. He also made certain there were no fire hazards in any power cables, material was not stored or located in a hazardous manner, and the railroad tracks were not blocked. Finally, he directed emergency procedures, was familiar with evacuation routes, and ensured that other guards were "performing according to the rules and regulations of the mine," Aplt. App. at 24. As the ALJ recognized, these tasks were integral to the mine's safe operation and the extraction of coal. *See Falcon Coal*, 873 F.2d at 922-23.[4]

Of course, there was evidence reflecting Hansen's role as a security guard. For example, he patrolled for trespassers and worked at the front gate, checking in other employees. But these and other similar duties do not negate Hansen's essential work in insuring the safe operation of the mine. Wackenhut submitted testimony from its branch manager suggesting its security guards worked only at the front gate; the ALJ gave the testimony little weight because the branch manager was at the mine

---

[4] Wackenhut points out that in *Falcon Coal*, the Sixth Circuit ultimately decided a night watchman did not satisfy the function test. 873 F.2d at 923. The claimant in that case performed duties that differed from Hansen's, however, underscoring the fact-sensitive nature of the analysis. Indeed, under different circumstances, the Sixth Circuit has since ruled that a night watchman at a coal mine *did* satisfy the function requirement. *See Sammons v. EAS Coal Co.*, No. 92-3030, 1992 WL 348976, at *2 (6th Cir. Nov. 24, 1992) (unpublished).

twelve years after Hansen had retired. The ALJ's decision is supported by substantial evidence.

The petition for review is denied, and the Board's judgment is affirmed.

Entered for the Court


Terrence L. O'Brien
Circuit Judge