**Edward R. DOWD, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR.**

No. 87–3535.

United States Court of Appeals, Third Circuit.

Argued Feb. 3, 1988.

Decided May 10, 1988.

As Amended June 3, 1988.

George J. Nagle, Shamokin, Pa., for petitioner.

George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., Barbara J. Johnson, Washington, D.C., for Appellate Litigation, Sylvia T. Kaser, Asst. Counsel for Appellate Litigation, Michael J. Rutledge (argued), U.S. Dept. of Labor, Washington, D.C., for respondent.

Before SLOVITER, STAPLETON and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

The sole issue in this appeal from an order denying black lung benefits is whether the petitioner is a "miner" within the meaning of the Black Lung Benefits Act (the Act). 30 U.S.C. § 901 *et seq.* (1982). We conclude that he is. Accordingly, we will grant the petition for review.

Benefits under the Act may be awarded only to "miners" and their surviving dependents. 30 U.S.C. § 901 (1982). The following statutory definitions are relevant to identifying the intended beneficiaries:

(d) The term "miner" means any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d) (1982).

(2) For purposes of subchapters II, III, and IV of this chapter, "coal mine" means an area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or to be used in, or resulting from, the work of extracting in such area bituminous coal, lignite, or anthracite from its natural deposits in the earth by any means or method, and the work of preparing the coal so

extracted, and includes custom coal preparation facilities;

(i) "work of preparing the coal" means the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing, and loading of bituminous coal, lignite, or anthracite, and such other work of preparing such coal as is usually done by the operator of the coal mine.

30 U.S.C. §§ 802(h)(2), 802(i) (1982).

Petitioner Edward R. Dowd was employed by the M.E. Wallace Company of Sunbury, Pennsylvania, from 1949 to 1982. Dowd asserts that he was a "miner" because he "worked in ... a coal preparation facility in ... the preparation of coal." The record contains uncontradicted testimony that M.E. Wallace purchased unprocessed anthracite coal, dried it, ground it, and bagged it. The unadulterated, processed coal was then sold to manufacturers of such products as battery casings, rubber tires, chemicals, and steel. The record further establishes that Dowd was employed as a "bagger" for over 20 years in the facility in which this processing took place. His job was "to bag coal dirt, load it on a bag truck, push it into a railroad car and stack it, stack it 13 bags high." 127a (testimony of Edward Dowd).

In support of his position that he is a "miner" under the Act, Dowd points to those portions of the statute providing that (1) a " 'miner' means any individual who ... has worked in or around a ... coal preparation facility ... in the ... preparation of coal" and (2) " 'work of preparing the coal' means the ... crushing, ... drying, ... and loading of ... anthracite, and such other work of preparing such coal as is usually done by the operator of the coal mine." In connection with the statutory definition of "coal preparation," Dowd correctly points out that, under Section 802(h)(2), the reference in Section 802(i) to "work ... usually done by the operator of the coal mine," includes not only work done by operators of facilities used in extracting coal, but also work done by operators of "facilities ... used in ... the work of preparing the coal so extracted, [including] custom coal preparation facilities."

Despite the fact that Dowd precisely fits the statutory definition of a miner, the ALJ concluded that he did not qualify because he "worked at an industrial plant whose activities constituted producing an industrial product (i.e., very fine coal powder) for the sole purpose of being sold for use by others in their actual manufacture of various kinds of commercial products." 112a. The Appeals Board affirmed, finding that since the "employer's processing activities involve the personalized use of the coal for a particular industrial purpose, ... that employer falls outside the functional boundary encompassing the coal producing industry." 158a. Before us, the respondent Director urges that review be denied (1) because M.E. Wallace processed the coal to conform to "a particular industrial purpose" of its customer and (2) because Dowd was not "involved in the commercial production of coal as *fuel* for the nation." Brief, pp. 6, 8–9.

The fact that Dowd's employer prepared anthracite to the specifications of its customers is clearly not grounds for his exclusion given the fact that the Act expressly includes those who work in "custom coal preparation" facilities. Accordingly, the sole relevant question, in our view, is whether Congress intended to cover only those who process coal that will ultimately be used as fuel and thus to exclude those who process coal that will ultimately be used for other purposes.

We have reviewed all of the legislative history cited by the Director and all of the cases to which he has referred us. We have found no support for the "coal intended as fuel" limitation the Director urges us to adopt. While there has been ample recognition of the fact that the Act covers those who contribute to meeting the energy needs of the nation, nothing suggests an intent to exclude others in the coal production industry facing exactly the same health hazard solely because of the end use to be made of the coal with which they

work. Indeed, the only relevant legislative history and judicial authority we have found points in a different direction. In *Marshall v. Stoudt's Ferry Preparation Co.*, 602 F.2d 589 (3d Cir.1979), *cert. denied*, 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed. 2d 644 (1980) this court had occasion to construe the above-quoted portions of Section 802(h)(2) and to review its legislative history. We there noted:

> Commenting on this sweeping definition, the Senate Committee stated that "what is considered to be a mine and to be regulated under this Act" was to be given the broadest possible interpretation and that doubts were to be resolved in favor of inclusion of a facility within the coverage of the Act. *See* S.Rep. No. 181, 95th Cong., 1st Sess. 1, 14, *reprinted in* [1977] U.S.Code Cong. & Admin. News, pp. 3401, 3414.

602 F.2d at 592.

In addition, we note that the Appeals Board itself has declined to hold that the ultimate use of coal is relevant to a determination of whether different forms of coal extraction are covered by the Act. *Bachert v. Director, OWCP*, 6 BLR 1–640, 1–642 (1983) ("The extraction of coal is covered by the Act and regulations regardless of the coal's ultimate use."). We find no basis in the text of the statute or in its overall purpose for applying criteria to coal preparation that are not applied to coal extraction.

Because Dowd falls within the statutory definition of a miner and the Director has suggested no persuasive basis for believing Congress meant something other than it said, we hold that Dowd is a "miner." In so holding, we stress that Dowd's employer does not handle processed coal,[1] does not consume the coal,[2] and does not utilize coal to produce a product or products other than coal.[3] The undisputed facts of record indicate that M.E. Wallace is involved only in the drying and crushing of unprepared anthracite. Under the statute, it is the operator of a custom coal preparation facility and Dowd is therefore a miner.

We will therefore grant the petition for review. Since the Director acknowledges that Dowd is otherwise qualified for benefits if he is a "miner," we will remand to the Benefits Review Board with instructions that this case be remanded as expeditiously as possible to the Deputy Commissioner for payment of benefits.

---

1. *Compare Eplion v. Director, OWCP*, 794 F.2d 935 (4th Cir.1986) (holding that claimant involved in transporting and distributing coal at terminal facilities operated by a mine was not a "miner" because the coal handled at the terminal was already processed and prepared for market); *Southard v. Director, OWCP*, 732 F.2d 66 (6th Cir.1984) (holding that claimant employed by coal retailers to load and deliver coal was not a "miner" because the coal was extracted and prepared before it reached the retailer's facilities).

2. *Compare Stroh v. Director, OWCP*, 810 F.2d 61, 64 (3d Cir.1987) (suggesting that if a process-ing plant purchases and processes raw coal for its own consumption, person who transports coal to the processing plant would not be a "miner"); *Foreman v. Director, OWCP*, 794 F.2d 569 (11th Cir.1986) (holding that claimant who was employed as a boiler room fireman by a steel producer that consumed coal from its own mines was not a "miner").

3. *Compare Sexton v. Mathews*, 538 F.2d 88 (4th Cir.1976) (per curiam) (holding that claimant involved in manufacturing coke from coal was not a "miner" because coke production does not constitute coal preparation under the statute).