Rita J. **MITCHELL**, Petitioner,

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Old Ben Coal Company, Respondents.**

No. 87–2078.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1988.
Decided Aug. 25, 1988.

Glenn B. Manishin, Jenner & Block, Washington, D.C., for petitioner.

Bronius K. Taoras, Old Ben Coal Co., Law Dept., Cleveland, Ohio, for respondents.

Before CUDAHY, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Charles Mitchell, the late husband of the petitioner Rita Mitchell, filed a claim for black lung benefits in June 1980. After Mr. Mitchell's death in August 1980, Mrs. Mitchell filed a timely claim for survivor's benefits. An administrative law judge (ALJ) rejected these claims in December 1984. The Benefits Review Board (the Board) affirmed this decision in April 1987. We reverse the decision of the Board and remand Mrs. Mitchell's claims to the ALJ for further proceedings.

## I

## Background

### A. *Mr. Mitchell's Employment History*

Mr. Mitchell worked for CB & Q Railroad for twenty-three years, between 1942 and 1968, cleaning railroad coal cars at the site of an Old Ben Coal Company (Old Ben) coal mine. Although Mr. Mitchell officially was employed by CB & Q, Tom McKie, the former mine superintendent at Old Ben, testified that CB & Q delegated its authority to him to supervise Mr. Mitchell and other employees who cleaned coal cars. Mr. Mitchell's task was to shovel and clean coal out of the cars before the cars were taken to the coal preparation plant for loading. He performed this work at a site approximately 100 yards from the coal preparation plant. Mr. McKie testified that Mr. Mitchell's job was a "dusty" one and that Mr. Mitchell "absolutely" was exposed to coal dust. Tr. at 32.

From 1971 until 1980, Mr. Mitchell worked directly for Old Ben in its underground mines. After working as a bottom laborer and as a belt cleaner, Old Ben transferred Mr. Mitchell in 1979 to the position of bottom cager because it required less exposure to coal dust. This transfer occurred after a chest x-ray of Mr. Mitchell revealed evidence of pneumoconiosis. Mr. Mitchell stopped work in January 1980 because of health problems, most notably cancer of the colon and pelvis. He died on August 1, 1980, apparently of cancer.

### B. *Medical Evidence*

The medical evidence regarding Mr. Mitchell comes from three sources: lay testimony from his wife, the results of chest x-rays, and medical reports from Dr. R.O. Fox and Dr. E.W. Barkdull.

1. *Lay Testimony.* Mrs. Mitchell testified that her husband began suffering respiratory problems in 1974. These breathing difficulties grew progressively worse until Mr. Mitchell had to wear a breathing mask in the mines. Mrs. Mitchell testified that her husband "just couldn't get his breath" and that he "was always spitting up mucus." Tr. at 15. She also testified that he constantly was coughing, spitting and choking.

2. *Chest X–Rays.* On February 14, 1979, Mr. Mitchell was given a chest x-ray by the National Institute for Occupational Safety and Health (NIOSH). Dr. J.S. Gordonson, a Board–certified radiologist and a "B" reader, determined that the x-ray revealed "evidence of category 1 simple pneumoconiosis." Director's Ex. 15 at 1.

As a result of this x-ray, Old Ben transferred Mr. Mitchell to a less dusty job. The x-ray was later reread by five radiologists retained by Old Ben. These radiologists read this x-ray as negative for black lung disease.

Mr. Mitchell was given another chest x-ray on January 26, 1980, pursuant to Mr. Mitchell's hospitalization for cancer. This x-ray was read by six radiologists, including the five radiologists retained by Old Ben. None of these readings were positive for pneumoconiosis, but three of the Old Ben readers found evidence of "granulomata."[1] Dr. T.A. Minetree, a reader not retained by Old Ben, found "evidence of old inflammatory disease." Director's Ex. 10 at 5. A final x-ray of Mr. Mitchell was taken on February 6, 1980, again in connection with his hospitalization for cancer. Dr. Minetree again found evidence of an old inflammatory disease, and three of the Old Ben readers found evidence of granulomata.

3. *Medical Testimony.* Dr. Fox treated Mr. Mitchell during his hospitalization for cancer. Dr. Fox diagnosed that Mr. Mitchell suffered from "chronic obstructive pulmonary disease" and from cancer. *Id.* at 3. In 1981, at the request of the Department of Labor, Dr. Fox reported that "I am not in a position to have firm knowledge as to the extent of his black lung disease if he had this. He certainly had pulmonary compromise and I am sorry not to be of more help to you in this." *Id.* at 1.

1. Granulomata refers to the condition of having "nodular inflammatory lesions, usually small or granular, firm, persistent, and containing compactly grouped mononuclear phagocytes." *Stedman's Medical Dictionary* 606 (5th ed. 1982).

2. Because Mr. Mitchell and Mrs. Mitchell filed their claims after March 31, 1980, their claims are governed by the permanent Part C regulations found at 20 C.F.R. § 718.201 *et seq.* *See Mullins Coal Co. v. Sieberg,* —— U.S. ——, 108 S.Ct. 427, 429, 98 L.Ed.2d 450 (1987); *Strike v. Director,* OWCP, 817 F.2d 395, 399 (7th Cir. 1987).

3. As an eligible survivor of a miner whose claim was filed prior to January 1, 1982, Mrs. Mitchell can establish derivative entitlement to benefits if the conditions for her husband's entitlement are met. *See* 20 C.F.R. § 725.212(a)(3)(ii).

Dr. Barkdull was Mr. Mitchell's family physician for approximately 25 years and had treated him for respiratory difficulties. Dr. Barkdull noted, on August 1, 1980, the day that Mr. Mitchell died, that Mr. Mitchell had terminal cancer. On August 13, 1984, Dr. Barkdull stated that "[a]s you will notice this man was diagnosed as having definite pneumoconiosis verified by X-ray. It is my medical opinion that Mr. Mitchell was totally disabled due to this condition." Claimant's Ex. 1 at 2.

C. *Procedural History*

Mr. Mitchell filed an application for black lung benefits under Part C of the Black Lung Benefits Act on June 26, 1980.[2] Following his death on August 1, 1980, his widow filed a claim for survivor's benefits on August 22, 1980.[3] The Department of Labor then named Old Ben as the responsible coal operator potentially liable for the payment of benefits. On June 17, 1981, the Department of Labor denied both claims, finding that Mr. Mitchell had not been totally disabled due to pneumoconiosis at the time of his death and that he did not die of pneumoconiosis. Mrs. Mitchell then requested a hearing before an ALJ.

A formal hearing was held on September 26, 1984 before ALJ Leonard Lawrence. The ALJ ruled on December 26, 1984 that Mrs. Mitchell was not entitled to benefits. The ALJ determined that Mr. Mitchell had not been a "miner" for at least fifteen years, and that therefore he was not entitled to a presumption of pneumoconiosis.[4]

Mrs. Mitchell's filing of a separate claim as a surviving spouse entitles her to benefits if she can prove that her husband's death was caused by pneumoconiosis. *See* 20 C.F.R. § 718.205(a).

4. 30 U.S.C. § 921(c)(4) provides in pertinent part:

If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable pre-

In reaching this decision, the ALJ adopted a two-part test for defining a "miner." The ALJ said that a claimant must have been employed at the site of a coal mine (the "situs" requirement), and that he must have been engaged in an "integral part of the coal extraction or preparation process" (the "function" requirement). *In re Rita J. Mitchell,* No. 82–BLA–5662, order at 2 (Dec. 26, 1984) [hereinafter Order]; R. at 56. The ALJ admitted that Mr. Mitchell had worked at a coal mine location, thus satisfying the "situs" test for coal mine employment. However, the ALJ rejected Mrs. Mitchell's contention that Mr. Mitchell's particular job satisfied the "function" requirement. *Id.* Absent any presumption of pneumoconiosis, the ALJ then determined that Mrs. Mitchell had not established by evidence that her husband actually suffered from pneumoconiosis.[5] Because there was no presumption of pneumoconiosis nor proof of pneumoconiosis, the ALJ denied Mrs. Mitchell's claims for benefits.

Mrs. Mitchell appealed to the Board. The Board determined that substantial evidence supported the ALJ's decision that Mrs. Mitchell had not established that her husband suffered total disability due to pneumoconiosis. Because of this determination, the Board said, with only cursory explanation, that "the issue of whether the miner had fifteen or more years of coal mine employment is moot." *Mitchell v. Old Ben Coal Co.,* BRB No. 85–144 BLA, decision at 2 n. 2 (Apr. 29, 1987); R. at 2.

## II

### Discussion

Under the permanent Part C rules for black lung claims filed before January 1, 1982, a claimant who has been employed for at least fifteen years in an underground coal mine and who produces evidence of a totally disabling respiratory or pulmonary impairment is entitled to a rebuttable presumption that he was totally disabled due to pneumoconiosis. 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(a). The ALJ determined that this presumption was not available to Mrs. Mitchell's claims because Mr. Mitchell had not worked for fifteen years as a miner. Mrs. Mitchell contends on appeal that she is entitled to the presumption because the ALJ employed an improper legal standard for defining a "miner." Assuming arguendo that the ALJ did employ a proper legal standard, she submits that the ALJ improperly characterized Mr. Mitchell's employment. Finally, she argues that she is entitled to benefits even without the presumption.

### A. *Definition of "Miner"*

#### 1.

The Black Lung Benefits Act defines a "miner" as any individual who worked "in or around a coal mine or coal preparation facility in the extraction or preparation of coal." 30 U.S.C. § 902(d). The Act also defines a "miner" as "an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment." *Id.* The Secretary of Labor's regulations further provide that a coal mine transportation worker is entitled to a rebuttable presumption that he was exposed to coal mine dust during his employment in or around a coal mine or coal

---

sumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis.
30 U.S.C. § 921(c)(4); *see also* 20 C.F.R. § 718.305(a). This presumption is only applicable for claims brought before January 1, 1982. *Id.*

5. 20 C.F.R. § 718.202(a)(4) provides:
A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X–ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.
20 C.F.R. § 718.202(a)(4).

preparation facility. 20 C.F.R. § 725.202(a).

Case law interpreting the statutory definition of "miner" has divided that definition, even for transportation workers, into two elements: (1) work in or around a coal mine—the situs requirement; and (2) performing coal extraction or coal preparation work—the function requirement. *See Stroh v. Director*, OWCP, 810 F.2d 61, 63 (3d Cir.1987); *Eplion v. Director*, OWCP, 794 F.2d 935, 937 (4th Cir.1986); *Southard v. Director*, OWCP, 732 F.2d 66, 69 (6th Cir.1984); *Amigo Smokeless Coal Co. v. Director*, OWCP, 642 F.2d 68, 70 (4th Cir. 1981); *see also Roberts v. Weinberger*, 527 F.2d 600, 601–02 (4th Cir.1975). Courts applying this test have done so without expressly recognizing contrary language in the statute itself. The ALJ applied this two-part test and determined that Mrs. Mitchell had not satisfied the function requirement with respect to her husband because his job did not involve an "integral part of the overall extraction or preparation process." Order at 2. Mrs. Mitchell contends that this test was erroneous as a matter of law because it is contrary to the plain language of the statute. She submits that the statute's language only requires that a coal mine transportation worker must have been exposed to coal dust at a mine site, not that the worker was involved in the extraction or preparation of coal.

### 2.

■ When attempting to discern congressional intent, our analysis must begin with the language of the statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 806 (7th Cir.1988). If that language is not ambiguous, our task is complete. *Jones*, 848 F.2d at 807. The relevant statutory language defines a miner as

> any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d); *see also* 20 C.F.R. § 725.202(a). In light of this language, we find Mrs. Mitchell's argument that the ALJ applied an improper standard not without some force. The statute's plain language offers two separate definitions of a miner. Congress clearly intended that an individual who works around a coal mine "in the extraction or preparation of coal" would fall within the statutory definition of a "miner." 30 U.S.C. § 902(d). But a second definition, which plainly is distinct from the first definition, provides that a "miner" also includes an individual who has worked in "transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment." *Id.* The statutory language does not suggest that a transportation worker must have been involved in the extraction or preparation of coal.

■ Although the statutory language is arguably not ambiguous, we cannot ignore the fact that three other courts of appeals have required, without any analysis, that transportation workers be involved in the extraction or preparation of coal. *See Stroh*, 810 F.2d at 63; *Eplion*, 794 F.2d at 937; *Southard*, 732 F.2d at 69. We are reluctant therefore to conclude unnecessarily that the plain language of the statute demands the opposite conclusion. This court has noted a judicial interest in "maintaining a reasonable uniformity of federal law and in sparing the Supreme Court the burden of taking cases merely to resolve conflicts between circuits." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987); *see also NuPulse, Inc. v. The Schlueter Co.*, 853 F.2d 545, 550–51 (7th Cir.1988). For this reason, we choose not to resolve definitively this statutory question. Rather, we conclude that, even under the test applied by the ALJ, Mr. Mitchell was employed as a miner for more than fifteen years.

### B. *Mr. Mitchell's Employment*

Our review of an ALJ's decision is, of course, "limited to whether the decision was rational, supported by substantial evi-

dence, and consistent with applicable law." *Dotson v. Peabody Coal Co.*, 846 F.2d 1134, 1137 (7th Cir.1988).[6] In this case, we believe the decision of the ALJ failed to meet this standard. The rule followed by other circuits is that a coal mine transportation worker is involved in the extraction or preparation of coal if his work relates to the preparation of coal for delivery, rather than the delivery of the finished product to consumers in the stream of commerce. *See Stroh*, 810 F.2d at 63–65; *Collins v. Director*, OWCP, 795 F.2d 368, 372 (4th Cir. 1986); *Eplion*, 794 F.2d at 937; *Southard*, 732 F.2d at 69; *Amigo Smokeless*, 642 F.2d at 70–71; *Adelsberger v. Mathews*, 543 F.2d 82, 84 n. 5 & 85 n. 6 (7th Cir.1976); *Roberts*, 527 F.2d at 602; *see also Dowd v. Director*, OWCP, 846 F.2d 193, 195 (3d Cir.1988). In our view, Mr. Mitchell's employment related to the preparation of coal for delivery, not to the delivery of a finished product to consumers in the stream of commerce.

The ALJ said that Mr. Mitchell's work "was to clean coal cars after the transportation of coal to consumers." Order at 2. According to the ALJ, "[s]uch work is not an integral part of the overall extraction or preparation process...." *Id.* We cannot agree. Mr. Mitchell worked under the direction of Old Ben employees at Old Ben's mine site and on Old Ben's time schedule. The purpose of this work was to help Old Ben prepare coal for delivery. Congress has said that the " 'work of preparing the coal' means the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing, *and loading* of bituminous coal...." 30 U.S.C. § 802(i) (emphasis supplied). It is uncontested that Mr. Mitchell's job was to clean railroad cars so that they could be loaded with new coal at the preparation plant. This work necessarily was performed prior to the loading of coal on the cars. Mr. Mitchell was not involved in the distribution of coal that had been fully processed; rather, he performed a task that was indispensable to Old Ben's preparation of finished coal. Thus, Mr. Mitchell was involved in the preparation of coal for delivery, not in the delivery of the finished

product to consumers in the stream of commerce. For that reason, the ALJ erred in not finding that Mr. Mitchell was employed as a miner during the twenty-three years he worked as a cleaner of railroad coal cars at the Old Ben mine site.

### C. *Terms of Remand*

■ In light of our decision that Mr. Mitchell was a miner for more than fifteen years, this case must be remanded to the ALJ for further factfinding. Mrs. Mitchell is entitled to the benefit of the fifteen-year presumption of pneumoconiosis if "other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment...." 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(a). The ALJ did not determine whether Mr. Mitchell suffered from a totally disabling respiratory or pulmonary impairment. The only medical decision reached by the ALJ was that Mrs. Mitchell had not established her husband's pneumoconiosis under 20 C.F.R. § 718.202(a)(4). That regulation provides in pertinent part:

A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X–ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

20 C.F.R. § 718.202(a)(4). The fact that the ALJ determined that Mrs. Mitchell had not met her burden under this regulation certainly does not mean that she could not establish, under 30 U.S.C. § 921(c)(4), that Mr. Mitchell had a totally disabling respiratory or pulmonary impairment. For instance, the ALJ determined that the testimony of Dr. Fox, Mr. Mitchell's treating physician during his hospitalization for cancer, did not establish pneumoconiosis under 20 C.F.R. § 718.202(a)(4). Dr. Fox testified

6. Although this appeal comes to us from the Board, it is well settled that our task is to review

the judgment of the ALJ. *See Dotson*, 846 F.2d at 1137, and cases cited therein.

that he had no firm knowledge as to whether Mr. Mitchell had pneumoconiosis, but that Mr. Mitchell certainly had "pulmonary compromise" and a "chronic obstructive pulmonary disease." Director's Ex. 10 at 1, 3. While we have no occasion to determine whether the ALJ improperly rejected Dr. Fox's testimony under 20 C.F.R. § 718.202(a)(4),[7] Dr. Fox's testimony creates at least a colorable claim that Mr. Mitchell was totally disabled by a respiratory or pulmonary impairment.[8] Similarly, the testimony of Dr. Barkdull may be sufficient to invoke the rebuttable presumption.[9] Because the ALJ never determined whether Mr. Mitchell had a totally disabling pulmonary impairment, we remand Mrs. Mitchell's claims to the ALJ so that he may decide this question. If the ALJ determines that Mrs. Mitchell has met her burden, the ALJ then must decide whether Old Ben has rebutted the presumption of pneumoconiosis.

### Conclusion

We conclude that Mr. Mitchell was a miner and that Mrs. Mitchell was entitled to the opportunity to establish the rebuttable presumption for pneumoconiosis. The case is remanded to the ALJ for further proceedings.

REVERSED AND REMANDED

---

7. Mrs. Mitchell argues on appeal that "Dr. Fox's diagnosis of chronic obstructive pulmonary disease was sufficient to prove that Mr. Mitchell had pneumoconiosis." Appellant's Br. at 32. This argument appears to have merit. In *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 591 (7th Cir.1985), we said that "'chronic obstructive pulmonary disease,' ... whether or not technically black lung disease (pneumoconiosis), fits the statutory definition, which is broader than the medical [definition]." Further, under 20 C.F.R. § 718.203(b), Mrs. Mitchell is entitled to a presumption that Mr. Mitchell's pneumoconiosis arose out of coal mine employment.

We have examined the record, however, and it is clear that Mrs. Mitchell never raised this argument before the Board. The only arguments raised before the Board were that Mrs. Mitchell was entitled to the benefit of the fifteen-year rebuttable presumption, and that the ALJ improperly rejected the testimony of Dr. Barkdull. "Absent exceptional circumstances, we do not consider issues that were not raised before the Board." *Arch Mineral Corp. v. Director, OWCP*, 798 F.2d 215, 220 (7th Cir.1986). Mrs. Mitchell's contentions, other than those brought before the Board, therefore were waived. Of course, this conclusion does not mean that the ALJ cannot consider on remand the significance of Dr. Fox's testimony, and all other relevant evidence, when determining whether Mrs. Mitchell was entitled to relief under the presumption.

8. The Board determined that "[a] finding that claimant has failed to establish the presence of a totally disabling respiratory impairment precludes entitlement under the Act based on the facts of this case." *Mitchell v. Old Ben Coal Co.*, BRB No. 85–144 BLA, decision at 2 n. 2 (Apr. 29, 1987); R. at 2. Since the ALJ never determined whether Mr. Mitchell suffered from a totally disabling respiratory impairment, we do not understand the significance of this statement.

9. The ALJ determined that the testimony of Dr. Barkdull was not sufficient, under 20 C.F.R. § 718.202(a)(4), to establish that Mr. Mitchell was totally disabled because of pneumoconiosis. This decision *does not*, in our view, foreclose the possibility that Dr. Barkdull's opinion establishes that Mr. Mitchell was totally disabled by a pulmonary impairment. Under 20 C.F.R. § 718.204, "total disability may ... be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition ... prevented the miner from engaging in employment...." Dr. Barkdull's conclusion that Mr. Mitchell had been totally disabled was based on Dr. Gordonson's "medically acceptable" reading of the February 1979 chest x-ray.