909 F.2d 1486
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Lottie BRADSHAW, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 89-2245.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 20, 1990.*
Decided Aug. 7, 1990.
 
 Before WOOD, Jr., CUDAHY and POSNER, Circuit Judges.
 
 ORDER
 
 1
 This is an appeal from the denial of benefits under the Black Lung Benefits Act. The issue we face is whether the miner had ten or more years of coal mine employment as the term is defined in the Act. According to the claimant (the deceased miner's widow), Louie Bradshaw worked hauling wooden props to the Orient # 1 coal mine in West Frankfort, Illinois from 1930 until 1940.[1] Between January 1943 and January 1949 Bradshaw was employed by the Bell & Zoller Coal Company as a "top laborer" at the Zeigler # 1 mine in Zeigler, Illinois. From 1949 until 1952 he worked for another coal company in the area.
 
 
 2
 Bradshaw died on May 14, 1976 from cancer of the prostate complicated by acute pneumonia. According to the claimant's testimony, Bradshaw suffered during his last years from the symptoms of coal workers' pneumoconiosis; he was short of breath, he tired easily, and he was unable to sleep lying down. An autopsy showed that Bradshaw did indeed have an early macular form of pneumoconiosis.
 
 
 3
 Bradshaw's widow, Lottie, filed an application for Black Lung Act benefits on May 17, 1976. The application was denied in 1979, and the case came on for a formal hearing before Administrative Law Judge Frederick D. Neusner in 1983. The ALJ found that Bradshaw had about eight years of coal mine employment, which included only the jobs he held after 1943. No mention was made of Bradshaw's work between 1930 and 1940. Because Bradshaw was found to have fewer than ten years of coal mine employment, the claimant was not eligible for the benefit of the interim presumption of total disability arising from pneumoconiosis caused by coal mine employment provided by 20 C.F.R. Sec. 727.203(a). The ALJ found that Bradshaw did have pneumoconiosis but that it could not be shown that he was totally disabled by it. Benefits were therefore denied.
 
 
 4
 Mrs. Bradshaw appealed the adverse decision to the Benefits Review Board. The Board remanded the case back to ALJ Neusner on October 29, 1985 for development of the record on whether Bradshaw had ever been a coal miner within the meaning of the Act, and if so how long. The Board asked the ALJ to consider whether Bradshaw's work above ground constituted coal mine employment, and to consider the evidence concerning the 1930-1940 period. The ALJ was directed to grant benefits under 20 C.F.R. Sec. 727 (the interim Labor regulations) if Bradshaw had ten or more years of coal mine employment and the Director was unable to rebut the interim presumption. If there were more than zero but fewer than ten years, the ALJ was to analyze the claim under 20 C.F.R. Sec. 410 (the H.E.W. regulations).
 
 
 5
 On remand, the ALJ did not take any additional evidence, but restated his former conclusion as to the duration of Bradshaw's coal mine employment. He found that the document listing Bradshaw as a "top laborer" implied that he worked in the extraction or preparation process and was a "miner" for benefits purposes for the post-1943 positions. But he specifically rejected the claimant's evidence about the 1930-40 work hauling props to the mine entrance.
 
 
 6
 Dir.Ex.05 [the claimant's letter] is not an "affidavit". It is a letter that purports to add some ten years to the period prior to 1943, when decedent first worked for Bell & Zoller Coal and Mining Co. I decline to find the facts the Board suggests might be inferred from this record, as neither Dir.Ex.05 nor the claimant's own testimony were credible evidence. The information in Dir.Ex.05 is unsupported and lacks corroboration. It cannot have been written by the signer, when her testimony and demeanor are considered.
 
 
 7
 To determine the duration of employment, then, the ALJ relied solely on Social Security records and on a written statement from Zeigler Coal Co., the successor firm to Bell & Zoller. Because total disability had not been shown, benefits were again denied. This time the Benefits Review Board affirmed. A timely petition for review to this Court was filed, and we now reverse and remand.
 
 
 8
 The controlling issue in this case is, as we have said, the duration of coal mine employment. The ALJ rejected evidence that Bradshaw worked between 1930 and 1940 hauling props to the mine saying it was not credible. An ALJ is not required to credit the uncontradicted testimony of a claimant. Peabody Coal Co. v. Benefits Review Board, 560 F.2d 797 (7th Cir.1977). But we can reject a finding of fact if we find it to be not supported by substantial evidence on the record as a whole. Freeman United Coal Mining Co. v. Benefits Review Board, 879 F.2d 245 (7th Cir.1989). Our examination of the record reveals that there was not substantial evidence to support the ALJ's finding that Bradshaw had not worked as a coal miner between 1930 and 1940.
 
 
 9
 The ALJ could not reasonably find Mrs. Bradshaw's oral testimony about the 1930-1940 period to be not credible because Mrs. Bradshaw never gave any such testimony at the hearing about that period. When her counsel tried to elicit testimony about that time, the ALJ changed the subject and asked about Bradshaw's employment after leaving the mining industry. The ALJ assured counsel that he would take all the documents in the record into account, specifically including the now-discredited Exhibit 5.
 
 
 10
 All right, Counselor, I'll interject only this much. There is documentary evidence of a sort concerning the worker's coal mine employment and his employment history; and in reviewing the file, I found those items at Exhibits 1, 3 and 4. Let me add for your assistance, also, that he made a passing reference in Exhibits 2 and 9, to his coal mine employment, or there were references made.
 
 
 11
 I'm interested in finding out about-- ... There were also indications in Exhibits 5 and 8. I was about to inquire as to what the worker formerly did, after he left coal mine employment, between the years 1955 and 1976....
 
 
 12
 Mrs. Bradshaw's attorney then moved on to question his client about that later work. He apparently relied on Judge Neusner's repeated assurances "that the record would be duly noted," and Mrs. Bradshaw was never asked to testify specifically about the pre-1940 period. The Director never attempted to cast doubt on the truthfulness of Exhibit 5, and duration of coal mine employment was not mentioned among the issues to be contested at the hearing.
 
 
 13
 Judge Neusner eventually refused to credit Exhibit 5 because it was obviously written by someone other than Mrs. Bradshaw (probably her representative at the hearing). We are troubled by this reason for rejecting the letter's contents. While Exhibit 5 was not an affidavit (because it was not attested), it was obviously intended to serve the function of an affidavit by providing evidence of a fact for the record. We would be very surprised indeed to learn that any affiant in a typical lawsuit wrote his or her own affidavit or answers to interrogatories; but we do not automatically assume that because a lawyer drafted a document for the client's signature the document is false. Indeed, Mrs. Bradshaw's representative would have been remiss had he not made sure some letter similar to Exhibit No. 5 was put in the record. It was imperative that Bradshaw's work between 1930 and 1940 be made part of the record. Social Security records were not kept at all before January 1937, and there are no entries in Bradshaw's Social Security records prior to 1941. Social Security withholding was not required for wages earned before 1939. 26 U.S.C. Sec. 1400 (1934 and Supp. V 1939). It would not be rational to require the production of Social Security records when none were kept. Neither could the ALJ reasonably require a written statement from the employer, Oscar Vance, who in all likelihood was long dead before 1983, particularly when the Director did not challenge the claimant's statement. The only possible realistic source of information about Bradshaw's work before 1940 is the recollection of a survivor, but the ALJ chose to rely solely on other documentary sources.
 
 
 14
 It was irrational to reject out of hand the only evidence on Bradshaw's activities before 1940. The only finding supportable on this record is that Bradshaw was, as stated in Exhibit 5, employed by Oscar Vance delivering props to the Orient # 1 coal mine.
 
 
 15
 That does not end this case; it only brings us to the question briefed by the parties--whether delivery of props for an independent contractor constitutes coal mine employment within the meaning of the Act and the regulations. We believe that it does, and we therefore reverse the denial of benefits and remand for further proceedings.
 
 
 16
 The term "miner" is defined at 30 U.S.C. Sec. 902(d) to include "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment." We recently analyzed this section in Amax Coal Co. v. Fagg, 865 F.2d 916 (7th Cir.1989). In Fagg we held that a bulldozer operator who participated in reclaiming land used for strip mining after mining operations were complete was a miner. Questions about whether a person is a miner are answered by a two-part analysis: first, we look at the situs of the work; and second, at the function performed. Mitchell v. Director, OWCP, 855 F.2d 485, 489 (7th Cir.1988). The situs inquiry is not troubling. Bradshaw worked delivering wooden props to the entrance of an operating underground coal mine, and there is really no question that he was exposed to coal dust. See 30 U.S.C. Sec. 802(h)(2).
 
 
 17
 The more difficult question is whether Bradshaw's function was sufficiently related to the extraction or preparation of coal to make him a miner. In Mitchell, supra, we considered whether workers involved with transportation of coal at the mine site were miners. We held that Mitchell, whose job was to clean railroad cars before they were filled with coal, worked to prepare coal for delivery. Id. at 490. Thus his work was prior to the delivery of the coal into the stream of commerce. Id. The point in the production and marketing process that the work affects is the key element in determining whether the work is in extraction or preparation; work before the coal enters the stream of commerce is mining, work in marketing the finished coal is not. Fagg, 865 F.2d at 919. Bradshaw's work was obviously related to the actual extraction of the coal from the mine. Without props, mining simply could not be done underground. Thus, even under the most strict version of the function test, which requires that the work be "an integral part of the overall extraction or preparation process," Mitchell, 855 F.2d at 489, Bradshaw's work passed muster.
 
 
 18
 The Director argues that Bradshaw was merely a deliveryman, and that deliverymen are not substantially involved in the extraction or preparation process. This is a very difficult argument to make in light of Fagg, Mitchell and Pinkham v. Director, OWCP, 7 Black L.Rep. 1-56 (B.R.B.1984). In Pinkham the Benefits Review Board held that delivery and repair of mining supplies was mining work, even though the worker was not directly involved with coal. The Director tries to distinguish Pinkham and similar cases by emphasizing that Pinkham and the others had done more than just deliver their goods and leave; but it is hard to see why repair of an existing piece of equipment (say, a mine prop) would be more essential to the extraction and preparation process than delivery of a new one.[2] The Director's summary on this point is tellingly unconvincing. "In each of these instances the covered miner performed duties without which the entire process of mining would cease. Mr. Bradshaw, on the other hand, merely dropped supplies for later use; this function is useful and indeed practically necessary, however, its performance is not vital to the actual extraction of coal." (emphasis added).
 
 
 19
 We hasten to add that there are limits to who is a miner. Not every person who delivers goods around town and happens to make a stop at the mine every so often will qualify: such a person would not pass the situs test. Bradshaw's work really was mining. Even though he was employed by an independent contractor rather than by the coal company, his only work was to transport mining equipment to the mine.
 
 
 20
 Because we hold that Bradshaw's work between 1930 and 1940 was coal mine employment within the meaning of the Act, and because the ALJ has already found that Bradshaw had an additional eight years of coal mine employment, Bradshaw's total coal mine work lasted well over ten years. The ALJ's finding that Bradshaw suffered from pneumoconiosis is uncontested; the combination of ten or more years of service with a finding of pneumoconiosis entitles the claimant to the benefit of the interim presumption of total disability due to coal mine employment granted in 30 C.F.R. Sec. 727.203(a). We remand the case to the ALJ for a determination of whether the Director can rebut the presumption under Sec. 727.203(b). Mrs. Bradshaw's application for benefits was filed almost fifteen years ago. We urge the ALJ to act on this matter expeditiously.
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need or Oral Argument." See Fed.R.App. P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Director's Exhibit No. 5 at the hearing before the ALJ as a letter signed by Mrs. Bradshaw which read:
 "In my claim for Black Lung benefits from the above, my husband, I wish to submit this additional evidence for your consideration.
 "From the year 1930 to 1940 Mr. Bradshaw was an employee of Mr. Oscar Vance who cut props for Orient # 1 mine in West Frankfort, Il. Mr. Bradshaw was employed to haul these props to the above mine, which exposed him to dust conditions prevalent around the mines.
 "Mr. Bradshaw worked in Zeigler # 1 mine for six years after his employment with Mr. Vance. This gives him a total of 10 years of work in coal mine environment."
 
 
 [2]
 The Fourth Circuit has held in an unpublished order that delivery and unloading of limestone used to keep down coal dust at the mine site was not mining work. Hagy v. Director, OWCP (4th Cir. August 16, 1988). To the extent that the Fourth Circuit relied on the function test to reach this conclusion, we disagree