**William L. SPURLIN, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent.**

No. 91–1727.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 17, 1991.

Decided Feb. 6, 1992.

Harold B. Culley, Jr., Raleigh, Ill. (argued), for petitioner.

Eileen N. McCarthy, Dept. of Labor, Appellate Litigation, Michael J. Denney, Helen H. Cox (argued), Dept. of Labor, Office of Sol., Washington, D.C., John H. Secaras, Sol. Gen., Dept. of Labor, Chicago, Ill., Donald S. Shire, Sol. Gen., Steven D. Breeskin, Dept. of Labor, Office of Sol., Linda M. Meekins, Ann McLaughlin, Benefits Review Bd., Dept. of Labor, Washington, D.C., for respondent.

Before POSNER, FLAUM and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

The Benefits Review Board held that William Spurlin was not a miner within the meaning of the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* He was, in fact, a conductor for a railroad. But that is not determinative of his status under the Act. For many years he "spotted" railroad cars for loading with coal at a mine. The parties have not favored us with maps or photographs or even with dimensions or definitions, but as nearly as we can figure out his work involved the following. He would report to a railroad depot near a coal mine and pick up empty cars there. He would drive the cars on a track that ran past the mine's "tipple," a large building used to prepare the mined coal for shipment, and up a hill. He would "spot," meaning park, the cars part way up the hill. Employees of the coal mine would release the brakes of the spotted cars, and the cars would roll down the hill to the

tipple, where they would be loaded, and then continue rolling, to the depot. Spurlin would by this time have returned to the depot to receive the loaded cars, and when they arrived he would assist in forming them into trains for shipment outward. Spurlin spent approximately seven and a half hours of each day at this work and was exposed to coal dust from the tipple for most of this period.

The Act defines a miner as "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment." 30 U.S.C. § 902(d). Taken literally, these words would make a railroad worker who never got closer to the mine than the railroad depot a miner if he was exposed to any coal dust at all. It is unlikely that the statute was meant to go so far. Perhaps "coal mine" should be taken with "transportation" as well as with "construction," so that before the Act applies a determination must be made that the claimant was engaged in "coal mine transportation," and not just in transportation in or around a coal mine. But this produces a redundancy: "coal mine ... transportation in or around a coal mine." It also threatens to collapse the "transportation" category into the "extraction or preparation" category, since the Act defines "extraction and preparation" broadly to include the "loading" of coal "and such other work of preparing such coal as is usually done by the operator of the coal mine." 30 U.S.C. § 802(i). Loading and preparing for loading would seem to encompass "coal mine transportation," making the second sentence of the statutory definition of miner superfluous.

The Office of Workers' Compensation Programs, which administers the Black Lung Benefits Act, draws the line at the tipple: once the cars are loaded at the tipple and thus are outward bound, "coal mine ... transportation" has ceased and "interstate commerce" has begun. This approach has commended itself to most of the circuits, see *Collins v. Director*, 795 F.2d 368 (4th Cir.1986), and other cases cited in *Mitchell v. Director*, 855 F.2d 485, 490 (7th Cir.1988), but *Mitchell* (followed in *Hanna v. Director*, 860 F.2d 88 (3d Cir. 1988)) expresses skepticism, noting that it ignores the second sentence in the statutory definition. 855 F.2d at 489. No more than in *Mitchell*, however, need we decide in this case whether to take our stand against the other circuits. *Mitchell* was not a tipple case; it held that a railroad employee whose duty it was to clean the empty cars before they were loaded with coal was a miner within the meaning of the statute even under the Office's narrow interpretation. For his "employment related to the preparation of coal for delivery, not the delivery of a finished product to consumers in the stream of commerce." *Id.* at 490. Cf. *Amax Coal Co. v. Fagg*, 865 F.2d 916, 919–20 (7th Cir.1989). The same is true of Spurlin. His job—or one of his jobs—was to transport the empty cars past the tipple to the point near the tipple where they began their descent. This was an essential step in the preparation of the coal for delivery. Of course, so were the construction and servicing of the cars, but the statute is confined to transportation "in or around a coal mine," and then only to the extent that the individual engaged in that transportation is exposed to coal dust. Had Spurlin merely brought the cars to a point near the tipple, deposited them there, and left the site, there would be a question whether he was working in or around the mine. But his work required him to drive the cars past, and near to, the tipple. He was working on the site most of the day. We do not see how he can be distinguished from a person who cleans the empty cars on the site, unless that's a dustier job—but the degree of exposure to dust is a separate part of the definition and not one in issue here.

The decision of the Benefits Review Board is reversed and the case remanded to the Board for further proceedings consistent with this opinion.

Reversed and Remanded.