30 F.3d 134
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bernice RATLIFF, widow of Cecil Ratliff, Petitioner-Appellant,
v.
CHESSIE SYSTEM RAILROAD, and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents-Appellees.
 No. 93-3535.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1994.
 
 Before: JONES and BATCHELDER, Circuit Judges, and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner Bernice Ratliff, as the widow of Cecil Ratliff, appeals the Benefits Review Board's denial of benefits she sought pursuant to the Black Lung Act, 30 U.S.C. Secs. 901-45. Respondent Chessie Railroad System was the long-time employer of Cecil Ratliff. We remand this case for reevaluation of the medical evidence presented, as we conclude that the administrative law judge ("ALJ") wrongly applied the law in finding Cecil Ratliff was not covered by the Act during his employment with Chessie Railroad.
 
 
 2
 * Cecil Ratliff worked in underground coal mines for two years in the 1920s. In 1930, Ratliff began work for C & O Railroad as a track cleaner and repairman, a job which he performed until his retirement 42 years later. C & O is a subsidiary of respondent Chessie System Railroad.
 
 
 3
 Ratliff's duties included building, repairing, and cleaning "mainline" and "spur" railroad tracks, the latter being the tracks on which empty cars are brought over from the mainline to be filled with processed coal and returned for coal delivery. His work cleaning and repairing the spurs took him beyond the tipples where coal was loaded and into the mouth of the mines. In total, about one-fourth of his forty-two-year Chessie career was spent working on the spur portions of the tracks. Ratliff testified that he would often be surrounded with and have to breathe fine coal dust while working, stating that "there is really more dust out on the railroads than there is in the mines." J.A. at 47-48.
 
 
 4
 Ratliff had severe respiratory problems by the 1970s that continued until he died on June 25, 1984. On January 18, 1979, Dr. Ballard Wright reported that an x-ray and other tests upon Ratliff demonstrated "severe functional impairment to the lungs" resulting from coal workers' pneumoconiosis, as well as chronic obstructive pulmonary disease, and arteriosclerotic heart disease. J.A. at 81. Dr. William S. Cole, apparently evaluating the same x-rays, found no pneumoconiosis. Dr. Charles F. Arnett, Ratliff's principal treating physician, had long treated Ratliff for chronic obstructive pulmonary disease. See J.A. at 15, 82, 85-92. Arnett wrote that pneumoconiosis contributed to Ratliff's death. J.A. at 15. Ratliff's death certificate similarly reflects that his death was due to "chronic obstructive lung disease (pneumoconiosis)," and this was certified by Dr. Ron Leslie, who examined him at death. J.A. at 107.
 
 
 5
 Ratliff filed a claim for federal disability benefits pursuant to the Black Lung Benefits Act on August 8, 1978. The claim initially was denied on July 26, 1979. However, after further development of the medical evidence, the Labor Department approved the claim on December 12, 1979, naming Chessie System as the responsible coal mine operator and insurance carrier. Chessie System challenged this finding of liability, and on April 15, 1981, the Department reversed itself and denied benefits to Ratliff, concluding that it no longer considered the type of railroad work Ratliff did as coal mine employment under the Act. Ratliff sought a hearing, and an ALJ denied benefits on September 16, 1983. The ALJ decided that 1) Chessie System was not a responsible coal mine operator because Ratliff's employment did not constitute coal mine employment under the Act, and 2) Ratliff failed to establish that his chronic obstructive pulmonary disease was due to pneumoconiosis arising out of coal mine employment.
 
 
 6
 After Ratliff's death, Bernice Ratliff filed a surviving spouse's claim for benefits. After an administrative denial, a second ALJ issued a decision and order denying benefits essentially reaching the same conclusions of the earlier ALJ. The Benefits Review Board, in a July 25, 1992 decision and order, affirmed the ALJ's denial. It upheld the ALJ's finding that Chessie was not the responsible coal mine operator because Ratliff's work "involved the delivery of coal to the ultimate consumer and was not integral to coal extraction or preparation." Id. at 5. After a motion for reconsideration was denied, Ratliff filed this appeal.
 
 
 7
 Our scope of review over decisions of the Benefits Review Board and the ALJ is limited. We decide only whether the ALJ's determination is supported by substantial evidence, as well as whether its decision is in accordance with applicable law. Skukan v. Consolidation Coal Co., 993 F.2d 1228, 1231 (6th Cir.1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 II
 
 8
 The ALJ credited Ratliff with only the two years of coal mine employment Ratliff performed before 1930, determining that his subsequent 42 years of work was not coal mine employment under the Act. We hold that this decision is legally in error.
 
 
 9
 Under the Black Lung Act, a coal miner is "any individual who works in or around a coal mine or coal preparation facility in the extraction or preparation of coal" including "an individual who works or has worked in coal mine construction or transportation around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment." 30 U.S.C. Sec. 902(d); see also 20 C.F.R. Secs. 725.101(a)(26), 725.202(a). Because the Act's definition of a mine "operator" includes "any independent contractor performing services or construction" at a mine, 30 U.S.C. Sec. 802(d), an individual is not precluded from receiving benefits because his employer is a railroad, rather than the mine company itself. Louisville and Nashville R.R. Co. v. Donovan, 713 F.2d 1243, 1247-49 (6th Cir.1983), cert. denied, 466 U.S. 936 (1984); Norfolk & Western Railway Co. v. Roberson, 918 F.2d 1144, 1149 (4th Cir.1990), cert. denied, 500 U.S. 916 (1991). Thus, a railroad worker such as Cecil Ratliff may be covered by the Act, if he meets the standard tests for a particular individual to qualify as a miner.
 
 
 10
 Whether an individual is a miner for purposes of the Act involves a consideration of two elements--the "situs" requirement and the "function" requirement. Director, OWCP, v. Consolidation Coal Co., 884 F.2d 926, 932 (6th Cir.1989). These components are to be broadly construed to effect wide coverage of individuals. Id. at 934. We believe that Ratliff established both requirements.
 
 
 11
 To satisfy the situs requirement, the person must have worked "in or around" a statutorily defined coal mine or coal preparation facility. A coal mine is an
 
 
 12
 area of land and all structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations, and other property, real or personal, placed upon, under, or above the surface of such land by any person, used in, or resulting from, the work of extracting in such area bituminous coal, lignite, anthracite, from its natural deposits in the earth by any means or method, and the work of preparing the coal so extracted, and includes custom coal preparation facilities.
 
 
 13
 30 U.S.C. Sec. 802(h)(2); 20 C.F.R. Sec. 725.101(23).
 
 
 14
 Ratliff's work on the railroad spurs took him past the tipples and to the mouth of the mine. Under current case law, this work satisfies the situs requirement. See Norfolk and Western Railway Co. v. Director, OWCP, 5 F.3d 777, 778-80 (4th Cir.1993) (Act covers railroad engineer who delivered cars to mines and picked up coal); Spurlin v. Director, OWCP, 956 F.2d 163, 164 (7th Cir.1992) (Act covers railroad worker who brought empty cars to the tipple); Hanna v. Director, OWCP, 860 F.2d 88, 92-93 (3d Cir.1988) (Act covers tug boat worker who anchored adjacent to the tipple while coal barges were loaded before departing); Mitchell v. Director, OWCP, 855 F.2d 485, 486, 490 (7th Cir.1988) (finding coverage of railroad worker who cleaned railroad cars 100 yards from the tipple before they were loaded with coal).
 
 
 15
 To satisfy the function requirement, an individual must have worked "in the extraction or preparation or coal." Coal preparation means "breaking, crushing, sizing, cleaning, washing, drying, mixing, storing, and loading of bituminous coal, lignite, or anthracite, and such other work or preparing such coal as is usually done by the operator of a coal mine." 30 U.S.C. Sec. 802(i); 20 C.F.R. Sec. 725.101(a)(25). We have held that a worker for a coal retailer who works with prepared coal that is already within the stream of commerce does not satisfy the function requirement. Southard v. Director, OWCP, 732 F.2d 66, 69-70 (6th Cir.1984). In Southard, the petitioner worked for coal retailers in a job that "consisted of unloading coal from railroad cars into trucks or storage piles, and delivering the coal to consumer homes." Id. at 68. Because the coal was extracted and prepared before it reached the retailers, the petitioner's work in unloading and stockpiling the coal was not coal preparation. Id. at 69-70. Unlike the work in Southard, Ratliff's work does not involve coal already in the stream of commerce.
 
 
 16
 To reach the above conclusion we must determine at what point the "preparation" of coal ends and the entry of coal into the stream of commerce begins. We found that in the circumstances of the present case, the final step of processing the coal (or "preparation") ended when the coal was loaded into the railroad cars at the tipple; after that, the coal entered the stream of commerce and was no longer being "prepared." Ratliff worked on the spurs that enabled empty cars to be brought to the tipple for loading; without properly functioning spurs, the cars could not have been transported and positioned to receive the coal. Though the spurs of course also enabled cars with loaded coal to leave the mine, that does not change the fact that some of Ratliff's work was necessary to enable coal to be loaded from the tipple, as part of the last step in its preparation. We therefore conclude that Ratliff meets the function requirement of the "miner" definition. Any other result would be inconsistent with the case law. See Norfolk and Western, 5 F.3d at 780 ("We are of opinion that the delivery of empty cars to a preparation facility is integral to the process of loading coal at the preparation facility and therefore is part of coal preparation."); Spurlin, 956 F.2d at 164 (transportation of empty cars past the tipple is "an essential step in the preparation of the coal for delivery").
 
 
 17
 Because Ratliff's work for Chessie Railroad satisfied both the situs and the function tests, on remand, the ALJ should re-determine the length of Ratliff's coal mine employment in light of the foregoing.
 
 III
 
 18
 The ALJ also determined that the evidence did not support a finding that Ratliff's death was due to pneumoconiosis arising out of his coal mine employment. However, in so concluding, the ALJ limited her consideration of the medical evidence to the question of whether Ratliff's two years of exposure to coal dust prior to working for Chessie caused his death. She stated:
 
 
 19
 It is the coal mining causation of the deceased's chronic lung disease which is determinative.... Review of evidence in total indicates none of the medical evidence establishes a causal relationship between Cecil Ratliff's very limited amount of coal mine employment which ended almost 50 years before his death and his chronic obstructive lung disease and/or the pneumoconiosis some examiners have diagnosed. Most of the examiners lacked full knowledge of the deceased's entire life-time occupational environment, and that only two years of it was covered employment to be considered in a causation opinion; that he worked only two years in coal mining followed by over 30 years of coal dust exposure in non-mining activity.... Dr. Wright's opinion is non-probative of the fact the deceased's lung diseases were related to his pre 1930 limited covered miner employment.
 
 
 20
 J.A. at 11.
 
 
 21
 Since, as stated in Section II, Ratliff worked as a "miner" under the Act for a portion of his 42 years with Chessie, the ALJ's review of the medical evidence regarding causation was unduly restrictive. Accordingly, on remand we instruct the ALJ to reevaluate the medical evidence as well.
 
 IV
 
 22
 We therefore VACATE the denial of benefits and REMAND this case to the agency for a redetermination of the time period that Ratliff worked as a coal miner as defined by the Act, a reconsideration of whether Ratliff's mine work caused his disease, and any other proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation